## ROSENBERG v. COMMISSIONER OF INTERNAL REVENUE.

Court of Appeals of District of Columbia. Argued November 15, 1929. Decided January 6, 1930.

No. 4892.

George C. Shinn, Vernon B. Lowrey, and Phillip B. Campbell, all of Washington, D. C., and Herbert S. Brussel, of New York City, for appellant.

Mabel W. Willebrandt, Asst. Atty. Gen., and C. M. Charest, Donald V. Hunter, Andrew D. Sharpe, J. Louis Monarch, and Norman D. Keller, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. The Board's decision in this case is reported in 10 B. T. A. 601.

This appeal involves alleged deficiencies in income taxes for the years 1919 and 1920, respectively. The taxpayer claimed a domicile in the state of Texas during those years, and made his income tax returns there upon a community property basis with his wife. The Commissioner, however, held that the taxpayer was not a domiciliary of Texas in those years, and rejected the returns. The Commissioner then determined the deficiencies in question, and the taxpay-

er appealed to the Board of Tax Appeals. The Board after hearing the evidence held that the taxpayer was not domiciled in Texas in 1919 and 1920, but was a domiciliary of the state of New York during those years. The Board entered an order of redetermination affirming the assessment made by the Commissioner, and the taxpayer appealed.

The Board found from the evidence that the appellant was born in Arkansas in 1878, and while a child was taken by his parents to live in Missouri. In 1897 he went to Texarkana, Tex., and engaged in business there. He was then unmarried and lived in rented rooms in the town. In 1900 he purchased a large farm located in Texas near to Texarkana. He built a small house on this property in 1902 in which he sometimes slept, at the same time maintaining a rented room in Texarkana. He had the land cleared and placed tenants upon it, and in 1919 and 1920 there were 13 buildings on the farm, principally the houses of tenants and employees He engaged in the business of buying and selling cotton in Texarkana and operated the farm in connection with his cotton business, employing a local manager upon the farm. During each cotton season appellant bought and sold cotton in Texarkana, and in the course of his operations purchased property in the town consisting of a wharf, shed, sample room, and office. This property was owned by him in 1919 and 1920. After the cotton season was over he made trips to St. Louis, where his parents lived, and occasionally went to New Orleans and New York. In 1908 or 1909 appellant bought a seat on the New Orleans Cotton Exchange and in 1911 a seat on the New York Cotton Exchange. In 1919 he bought a seat on the New York Stock Exchange. In September and October of each year he spent a considerable part of the time in Texarkana engaged in a spot cotton business. In 1917 his business was transacted in a small way, but his trips to Texarkana were less frequent. He kept in close touch with his farming operations through weekly reports from his local manager. He was a member of the Chamber of Commerce, of the Country Club, and of a lodge of Elks. in Texarkana, and continued as such, paying dues accordingly during 1919 and 1920.

In 1916 or 1917 appellant bought a portable bungalow at Great Neck, Long Island, and spent week-ends there. He married in New York City on April 11, 1918, and then lived at 230 West Seventy-Ninth street in

that city. During 1919 and 1920 he spent his summers at Great Neck, and during the winter months had an apartment at the St. Regis Hotel, in New York City. In the fall of 1918, he and his wife went to Texarkana for a visit and likewise returned for visits in 1919 and 1920. When in Texarkana he visited the farm, but stayed at the Avenue Hotel or Huckens House in the town. His wife never stayed with him at the four-room house on the farm. Appellant informed his manager that he would sell his farm if he could get a right price for it, but in case he did sell it he would retain the oil rights. Appellant has not voted in Texas since 1910 or 1911, and has never voted in New York. He registered for the selective service draft with the local county board of Texarkana on September 15, 1918, and then stated his "permanent home address" to be the "Avenue Hotel, Texarkana, Texas." For the years 1919 and 1920 and subsequent years he made income tax returns to the state of New York as a nonresident. He has always claimed Texarkana as his domicile. In making his last will and testament some time subsequent to the year 1918 he stated that he was a resident of the state of Texas. During the years 1919 and 1920 he kept two sets of books of his business transactions, one at Texarkana, and one at New York. At the close of each year he compiled necessary information from his New York books and forwarded it to his agent at Texarkana, with instructions to file an income tax return for him. Such a return was filed by the agent for 1919 showing a total net income subject to surtax of $49,713.98. This was not on the community property basis. A separate income tax return was filed for the wife for 1919 showing a net income of $25,232.64. On or about September 15, 1921, an amended income tax return was filed for appellant by his agent on the community property basis, showing a total net income subject to surtax of $33,430.62. An income tax return for 1920 was filed by the agent at Texarkana, on the community property basis, showing a net income on which taxes were to be computed of $33,339.50.

It is the settled rule of this court that the Board's findings of fact should be accepted as final if sustained by substantial evidence. W. K. Henderson Iron Works & Supply Co. v. Blair, 58 App. D. C. 114, 25 F.(2d) 538. The court however will examine the facts on which the Board's conclusions are based for the purpose of determining whether the law has been properly applied in accordance with such facts. Geo. Feick & Sons Co. v. Blair, 58 App. D. C. 168, 26 F.(2d) 540. Compare Avery v. Commissioner of Internal Revenue, (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277; Royal Packing Co. v. Commissioner of Internal Revenue (C. C. A.) 22 F.(2d) 536; Blair, Commissioner v. Curran (C. C. A.) 24 F.(2d) 390; Bishoff v. Commissioner of Internal Revenue (C. C. A.) 27 F.(2d) 91.

The question of domicile is a mixed question of law and fact, to be submitted to the jury under proper instructions of the court. "But generally speaking the question as to what shall be considered the domicile of a party is in all cases a question of fact rather than of law." 19 C. J. 441. The evidence in the present case consisted in large part of the testimony of witnesses appearing before the Board. Upon all the evidence the Board found that the taxpayer was domiciled in the state of New York, and not in Texas, in the years 1919 and 1920.

It is evident that the taxpayer had a domicile in Texas before he went to live in New York, and the burden rested upon the Commissioner to prove that the taxpayer then intended to adopt the latter state as his place of domicile. The question of intention in such cases may be determined from actions and declarations. In the present case the taxpayer constantly declared an intention to retain his domicile in Texas. His conduct however strongly tended to prove a contrary intention, and often in such cases conduct is more persuasive than words.

"Declarations either of domicile, or intention concerning it, are of course not conclusive. Declarations alone cannot prevail unless borne out by acts. More weight will be given to a person's acts than to his declarations, and when they are inconsistent the acts will control." 19 C. J. 440.

In Gilbert v. David, 235 U. S. 561, 35 S. Ct. 164, 167, 59 L. Ed. 360, Mr. Justice Day, speaking for the Supreme Court of the United States, said:

"This matter of domicil has been often before this court, and was last under consideration in the case of Williamson v. Osenton [232 U. S. 619, 34 S. Ct. 442, 58 L. Ed. 758], supra. In that case the definition of domicil, as defined by Mr. Dicey, in his book on 'Conflict of Laws,' 2d Ed. 111, is cited with approval. There change of domicil is said to arise where there is change of

abode and 'the absence of any present intention to not reside permanently or indefinitely in the new abode.' Or, as Judge Story puts it in his work on 'Conflict of Laws,' 7th Ed. § 46, page 41, 'If a person had actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of fixed present domicil, it is to be deemed his place of domicil, notwithstanding he may entertain a floating intention to return at some future period.' 'The requisite animus is the present intention of permanent or indefinite residence in a given place or country, or, negatively expressed, the absence of any present intention of not residing there permanently or indefinitely.' Price v. Price, 156 Pa. 617, 626, 27 A. 291. * * *

"It is apparent from all the testimony that the plaintiff may have had, and probably did have, some floating intention of returning to Michigan after the determination of certain litigation and the disposition of his property in Connecticut, should he succeed in disposing of it for what he considered it worth. But, as we have seen, a floating intention of that kind was not enough to prevent the new place, under the circumstances shown, from becoming his domicil. It was his place of abode, which he had no present intention of changing; that is the essence of domicil."

The circumstances disclosed in the present case tend to support the Board's finding that the taxpayer took up his residence in New York for an indefinite and uncertain time without any actual intention of ever returning to Texarkana as his permanent home. New York was the permanent center of practically all of his personal activities, and his income was chiefly derived from operations in that state. He had married there, his wife being a resident of New York, and had established a suitable home in that state. His reference to the Avenue Hotel of Texarkana as his permanent residence may well be considered as colorable only. At most it expressed a vague, indefinite, and floating intention most unlikely to be carried out. These circumstances disclose a "repugnance" between the facts and the taxpayer's declarations concerning the place of his domicile, the circumstances are the more persuasive of the two.

We are of the opinion that the Board's findings are supported by substantial evidence. The decision appealed from is therefore affirmed, with costs.