## ROLLINGS v. ROLLINGS.
### No. 5186.

Court of Appeals of the District of Columbia.

Argued Oct. 12, 1931.

Decided Nov. 2, 1931.

William L. Thomas and Tracy L. Jeffords, both of Washington, D. C., for appellant.

S. McC. Hawken, George F. Havell, and Harry H. Hollander, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellee, whom we shall hereafter speak of as Mrs. Rollings, brought suit in the Supreme Court of the District for absolute divorce from her husband, appellant, whom we shall hereafter speak of as Dr. Rollings. At the subsequent hearing, the trial court refused an absolute divorce, but granted a divorce a mensa on the ground of cruelty. From this decree, Dr. Rollings appeals on the ground that the lower court had no jurisdiction, because at the time Mrs. Rollings's suit was filed she was a resident of West Virginia, and not a resident of the District of Columbia.

The parties were married in the District of Columbia in 1888, and remained here until 1896. They then moved to West Virginia, where they bought a lot and built a home, and where Dr. Rollings practiced his profession until 1918, a period of twenty-two years. In the latter year, Dr. Rollings was commissioned as a surgeon in the Army, and from thence until 1921 was stationed on vessels or at posts in the military service. A year after Dr. Rollings left West Virginia to join the medical staff of the Army, Mrs. Rollings left West Virginia and came to Washington as a war worker. In 1921, after Dr. Rollings's discharge from the Army, he was appointed to a position in the Veterans' Bureau and stationed at Washington, and from thence on, until the separation and the commencement of Mrs. Rollings's suit for divorce, they continued to reside together in the District of Columbia as husband and wife.

The evidence, we think, abundantly shows that Dr. Rollings, notwithstanding his residence in Washington after leaving the Army, regarded himself as a citizen of West Virginia. He paid his poll taxes and voted there in the elections, and we think the evidence shows the same to be true of Mrs Rollings, for she, too, after the extension of the franchise to women, went to West Virginia and made oath in accordance with the laws of that state that she was a citizen of West Virginia, resident in the county in which she and her husband had lived together for twenty-two years; that she had no other legal residence, and that she was entitled to vote in West Virginia. This occurred about 1920, and, after the passage by West Virginia of a law providing for absentee voting, she continued to vote by mail in the elections in West Virginia, at least up to and until the fall of 1926. Under the laws of West Virginia, an absentee voter, to be entitled to a ballot and to the privilege of voting, must, in each application for such ballot, make oath that he or she is a duly qualified voter under the laws of the state of West Virginia, having resided in the state for twelve months and in the county in which he or she offers to vote for at least sixty days next preceding the election, and, by way of justification for the issuance of the ballot, must account for his or her temporary absence from the state.

Mrs. Rollings testified that she made the required oath and the required explanation, and thoroughly understood what she did, nor do we understand that she now repudiates any part of it or claims that at that time she had any other purpose or intention than to claim her residence in West Virginia. Between the time when she filed her election oath in 1926 and the filing of her suit on January 16, 1928, she continued, as she herself says, to live with her husband in their apartment in Washington city as husband and wife. So that we have here a case in which both husband and wife; though sojourning in the District of Columbia, in the most positive way claimed residence in the state of West Virginia, and with no contrary claim on the part of either until the separation on January 16, which was also the date of the institution of the suit by the wife for divorce.

The question which we have to decide is therefore whether the wife, then a resident of West Virginia, who, for good cause, leaves her husband's home, may eo instante change her residence so as to give the courts of the District of Columbia jurisdiction, and, if she may, how the intention to do so must be evinced.

The laws in the District of Columbia in relation to suits for divorce (D. C. Code 1924, § 971, D. C. Code 1929, tit. 14, § 61) require a bona fide residence of three years where the cause for which the divorce is asked arises outside the District, but in cases in which the application is based on a cause arising in the District there is no requirement as to length of time. Construing this stat-

ute, which was the same then as now, we said in Downs v. Downs, 23 App. D. C. 381, 387: "By this it is evidently intended and required that residence for the purpose of divorce should in all cases be in good faith. * * * A person may not be a resident of two different States at the same time for the purpose of suing for a divorce in either, if residence is made a prerequisite for the maintenance of the suit. And for the same reason, where the same prerequisite of residence is required for divorce and for the exercise of the elective franchise, one cannot at the same time be a resident of one jurisdiction for one of these purposes and a resident of another jurisdiction for the other purpose."

But counsel for Mrs. Rollings insists that, even if this be conceded, Mrs. Rollings had a right at the moment of separation from her husband to elect to change her residence from West Virginia to the District of Columbia where she had in fact resided for several years, and that, since no period of time is prescribed in the statute, the election could be made coincidently with the separation, and hence her declaration at the time of filing her bill was sufficient to bring about this change, and thus to comply with the laws of the District of Columbia as to residence, but we think this would be straining the statute beyond its reasonable intendment.

Undoubtedly the wife may establish a different domicile from that of her husband for purposes of divorce. Williamson v. Osenton, 232 U. S. 619, 625, 34 S. Ct. 442, 58 L. Ed. 758. And this right is absolute whenever it is necessary or proper that she should do so. It springs from necessity, and endures as long as the necessity. In such cases, the legal fiction that the domicile of the husband is the domicile of the wife does not apply, and, when conditions require her to leave the home, or when she is driven from it and goes into another state for the purpose of there permanently residing, she acquires a domicile in the latter which may entitle her to sue for divorce. And in the District of Columbia, for offenses committed against her in the District, there is no requirement as to the time of her residence there. But, since everyone must have a domicile somewhere, and since also a domicile once existing is not lost by mere abandonment, two things are necessary to accomplish the changed status: First, the acquisition of a new domicile; and, secondly, the intention to abandon the old and to reside elsewhere permanently. As was said in

Shaw v. Shaw, 98 Mass. 158, 160: "The former domicil remains until both the intent and fact of change of actual residence to another place have concurred to establish a new domicil there."

Here we have a case in which there was a change of residence. Mrs. Rollings, on the day she instituted her suit, left the apartment in which she and Dr. Rollings had lived, as she herself says, as husband and wife up to that time, took some of her furniture with her, and established a residence in a different part of the city. But we have searched the record in vain for any proof of the fact that she then and there contemplated and intended a change of legal residence from West Virginia to the District of Columbia. Intent ordinarily is the purpose to do a particular thing to effect a definite result. It is different from motive, for the latter is the moving power which impels the action. In the instant case, the cause which moved her to change her residence was the husband's cruelty and her inability to live longer under his roof. The motive for the change was to accomplish her divorce and obtain a decree for maintenance and support, but in the whole proceeding nothing appears which would justify us to say that on the day in question there was also the intent to surrender her citizenship in West Virginia and to change her legal residence from that state to the District of Columbia.

In these circumstances, we are constrained reluctantly to hold that the trial court was without jurisdiction, and for that reason the decree passed there must be, and is, reversed.

Reversed.