### MARCUM v. MARCUM.
#### No. 5552.

Court of Appeal of the District of Columbia.
Argued Nov. 1, 2, 1932.
Decided Dec. 12, 1932.

Richard L. Merrick, of Washington, D. C., for appellant.

Dwight E. Rorer and Cyril S. Lawrence, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This suit was originally brought by appellee against appellant for maintenance under the applicable District of Columbia statute. Title 14, § 75, D. C. Code 1929. After partial hearing on the merits, appellee, whom we shall call Mrs. Marcum, with leave of court amended her bill of complaint and prayed for a·limited divorce. The trial court passed a decree accordingly, and this appeal is from that decree.

We are met at the threshold with the question whether Mrs. Marcum was at the time the proceedings were begun a legal resident of the District of Columbia. Title 14, § 61, D. C. Code 1929. The trial court found she was, but an examination of the evidence convinces us the decision in this respect is wrong.

Appellant, whom we shall speak of as Mr. Marcum, was born at Huntington, W. Va., in 1881, and lived there until 1913. He went to Texas in that year and acquired a legal residence in that state. There he married Mrs. Marcum in 1914. In 1916 he returned to West Virginia accompanied by Mrs. Marcum, and re-established his residence at Huntington. He has ever since maintained his legal residence in West Virginia, and has ever since legally voted there. Mrs. Marcum became a registered voter in West Virginia around 1924, and voted there a number of times, including the presidential election of 1928. In November, 1918, Mr. Marcum joined the Army, and in 1919 was transferred to the Judge Advocate General's Department at Washington. He and his wife thereafter resided in Washington. In January, 1923, he was appointed special assistant to the Attorney General and assigned to the office of the Alien Property Custodian, and presumably he is still serving in that capacity.

In April, 1928, the parties separated, their home in Washington was broken up, their furniture moved to storage, and Mr. Marcum secured rooms in another part of the city, and Mrs. Marcum returned to Huntington, W. Va., where, except for occasional trips to Washington from time to time, she continued to reside until September 1, 1929, at which latter date she returned to Washington, secured a room at the Burlington Hotel, and ten days later, or on September 10, brought proceedings for maintenance against her husband. During the pendency of the proceeding, as we have already noted, namely, on November 11, 1930, her bill was amended by adding thereto a paragraph praying that a divorce a mensa et thoro be awarded at the final hearing. On the following December 9 Mr. Marcum filed an answer to the amended bill in which he charged that the trial court was without jurisdiction to grant the relief prayed, for the reason that Mrs. Marcum was not at the time of the filing of her original bill, nor then, a resident of the District of Columbia within the meaning and intent of section 971 of the Code of Laws for the District of Columbia, 1924 (title 14, § 61, D. C. Code 1929), but, as we have already seen, the trial court sustained its jurisdiction and awarded a divorce a mensa.

From what we have said, it is apparent that from the time of the return of the Marcums to West Virginia both husband and wife continued to be legal residents of that state, and both exercised the voting privilege of citizens of that state up to and including the election in the fall of 1928, which latter event was subsequent to the separation, and at that time Mrs. Marcum was actually residing in West Virginia. She returned to the District of Columbia on September 1, 1929, and ten days later instituted the original proceeding.

We have examined her evidence with great care to ascertain if there is any support to be found in it for the conclusion that she had abandoned her legal residence in West Virginia and assumed a new residence in the District of Columbia, but we find nothing except her statement when she was recalled to the witness stand more than a year after the suit was instituted, and in which she said she was a resident of the District and had always been since 1919, and intended so to continue. But obviously she was confused as to the meaning of the word "residence," for, while it is quite true she had resided in the District for the most of the time since 1919 in the sense of having dwelled here, during all of that time, by her own ad-

mission, her legal domicile was in West Virginia.

In Rollings v. Rollings, 60 App. D. C. 305, 53 F.(2d) 917, 919, we were called upon to decide a question much like the present, and there we said:

"Undoubtedly the wife may establish a different domicile from that of her husband for purposes of divorce. Williamson v. Osenton, 232 U. S. 619, 625, 34 S. Ct. 442, 58 L. Ed. 758. And this right is absolute whenever it is necessary or proper that she should do so. It springs from necessity, and endures as long as the necessity. In such cases, the legal fiction that the domicile of the husband is the domicile of the wife does not apply, and, when conditions require her to leave the home, or when she is driven from it and goes into another state for the purpose of there permanently residing, she acquires a domicile in the latter which may entitle her to sue for divorce. And in the District of Columbia, for offenses committed against her in the District, there is no requirement as to the time of her residence there. But, since everyone must have a domicile somewhere, and since also a domicile once existing is not lost by mere abandonment, two things are necessary to accomplish the changed status: First, the acquisition of a new domicile; and, secondly, the intention to abandon the old and to reside elsewhere permanently. As was said in Shaw v. Shaw, 98 Mass. 158, 160: 'The former domicil remains until both the intent and fact of change of actual residence to another place have concurred to establish a new domicil there.' "

An examination of the record in this case convinces us that Mrs. Marcum did not form or carry out an intention to change her residence from West Virginia to the District of Columbia. It was not necessary she should do so in order to prosecute her suit for maintenance, and that was the motive for her return from West Virginia to Washington. When she first arrived, she went to a hotel where she secured a room in the hotel annex, and she was there when this proceeding was begun. That she may at some time since her arrival here have formed the intent to establish actual residence in this District may be true, and, if it is true, the fact may be shown by proper supporting evidence, but that this was not a fact when the proceeding was begun or when the bill was amended we think is obvious from a fair consideration of all the evidence, and, as a result of this conclusion, we are of opinion that the trial court erred in not sustaining the motion to strike the amendment, and for that error the decree must be modified and the case remanded. But we are also of opinion that the court below, having first obtained jurisdiction of the parties under the bill for maintenance, had the power and the right to enter a decree for maintenance, and that in the circumstances shown in the record in this case the allowance of the amount of alimony should be sustained as a proper allowance for maintenance.

The case will therefore be remanded to the court below with instructions to strike the amendment and to modify the decree of divorce in accordance with this opinion.

The costs of this appeal will be charged against appellant.

Modified and remanded.