## DENNETT v. DENNETT.
### No. 5904.

Court of Appeals of the District of Columbia.
Decided May 21, 1934.

Homer L. McCormick, of Washington, D. C., for appellant.

Joseph T. Sherier, J. Y. E. Allen, and F. Hunter Creech, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal by a wife from a decree of absolute divorce rendered against her in the Supreme Court of the District of Columbia.

The two questions presented are: First, as to the jurisdiction of the court, and, secondly, as to the sufficiency of the evidence to establish the adultery alleged against the wife and the corespondent.

The controlling provision of the Code 1901 (section 971 [D. C. Code 1929, T. 14, § 61]) is that "no decree of nullity of marriage or divorce shall be rendered in favor of anyone not a resident of the District of Columbia," and the primary purpose of this statute is to prevent this jurisdiction from becoming a haven for persons seeking divorce, as it was at one time. Creel v. Creel, 43 App. D. C. 82.

The bill of complaint states the husband to be a resident of the District of Columbia; the answer of the wife admits that she and the husband are residents here; and she filed a cross-bill praying affirmative relief on the same theory.

These pleadings were sworn to by the parties and certified by the counsel in the usual form, and no question was raised as to residence or jurisdiction until after hearing and adjudication by interlocutory decree.

Whereupon the defendant by new counsel, but on facts known from the beginning of the controversy, moved to vacate the interlocutory decree on the ground that the parties were not residents of the District of Columbia, but of the state of New Jersey.

The basis of this motion is that while the plaintiff was stationed in New Jersey on duty as a naval officer, and the parties were living together there, they registered as voters and cast votes in one or more elections, the laws of New Jersey requiring in effect that voters shall be residents of that state. This motion being denied below, the contention is renewed here.

The evidence offered to sustain this position on the facts is not clear, but the plaintiff testified that he registered as a voter in New Jersey during his sojourn there; attended an election; procured a ballot, but then concluding that he was not entitled to vote, did not cast his ballot.

Yet his testimony sufficiently established that he registered himself as a voter in New Jersey in 1931.

This situation is claimed to bring this case within the rulings of this court in Downs v. Downs, 23 App. D. C. 381, and Rollings v. Rollings, 60 App. D. C. 305, 53 F.(2d) 917, but we think it is to be distinguished from both.

For Downs attempted to maintain two places of legal residence in different jurisdictions at the same time, and contended that he was entitled to vote in Maryland as a resident of Baltimore, while suing for divorce in the District of Columbia as a resident of Washington.

In denying this contention the court said that "it is not open to argument that there cannot be at the same time two such places

of residence. It is a law of our physical existence that one cannot be in two places at the same time; and it is equally a law of our civil existence that there cannot be two places of residence, each with the intention of our remaining there permanently or indefinitely and of its becoming our fixed and permanent home."

In that case the plaintiff was a native of Maryland; there was doubt as to whether he had ever acquired a legal residence in the District of Columbia, though long a sojourner here; and it was clear that before his suit was brought he broke up his home here; separated from his family; and rented rooms in Baltimore with the avowed intention of gaining residence there.

In the Rollings Case, the parties after living together in Washington for several years, removed to West Virginia, where they bought land; built a house; the husband established practice as a physician; both parties voted; and both regarded their permanent residence as being there.

In this manner they lived in West Virginia for twenty-two years, until 1918 when Dr. Rollings was commissioned a surgeon in the Army, and was thereafter stationed at various posts in the military service.

During this period Mrs. Rollings came to Washington as a war worker, and when Dr. Rollings was discharged from military service in 1921, he was appointed to a position in Washington under the Veterans' Bureau.

The parties thereafter lived together in Washington, but both continued to regard West Virginia as their legal residence, as indicated by continuing to vote there, and otherwise.

In 1928 Mrs. Rollings left her husband's apartment in Washington, established herself in another apartment here, and filed her suit for limited divorce, which her husband contested on the ground that jurisdiction of the cause was in the courts of West Virginia and not in the Supreme Court of the District of Columbia.

This contention was sustained by this court, where it was said that both parties, though sojourning in Washington, had throughout their sojourn "in the most positive way claimed residence in the State of West Virginia, and with no contrary claim on the part of either until the separation."

And when the separation occurred, with the suit filed on the same day, there was nothing to indicate that the plaintiff had ever repudiated her West Virginia residence and rights, or that she then contemplated and intended a change of permanent legal residence from West Virginia to the District of Columbia.

Since there is no voting in the District of Columbia, and consequently no registry of voters, we are without those guides to a man's intention while he is living here, either in respect of acquiring residence in this jurisdiction or abandoning one elsewhere, but this plaintiff as an officer of the Navy was required by the naval regulations to register his place of legal residence on entering the service, and to renew that registration every six months.

His place of actual abode is changed from time to time by official order, but his place of legal residence may be changed only by his giving notice to the Navy Department and obtaining approval in advance, and not by an ex post facto announcement of a change made by himself.

When this plaintiff graduated from the Naval Academy and entered the service, he registered the District of Columbia as his place of legal residence, and he renewed that registration every six months thereafter, including the period of these proceedings and the acts complained of herein.

Furthermore, the plaintiff in this case was born in the District of Columbia; lived here with his parents and attended school here until he entered the Naval Academy; he joined a church here in his youth and has maintained his membership therein; when he joined the American Legion while stationed in New Jersey he joined a post of the District of Columbia; and the only living members of his family identified in the record, namely, his mother and his married sister, live here.

Residence is dependent upon considerations of intention and conduct, which make each case rest upon its own facts and circumstances, and the whole course of this plaintiff's conduct, and the background of his life, indicate his intention to make the District of Columbia his permanent place of legal residence, with the sole exception of his registry as a voter in New Jersey.

That episode is inconsistent with his residence here, and from his own account thereof he perceived this inconsistency before casting a vote, and never did vote in New Jersey.

But however this may be, we are of opinion that this episode, viewed as an item of evidence relating to residence, is insufficient to overcome the other evidence in the record indicating the fixed intention of the plaintiff to make the District of Columbia his place of legal residence.

If the New Jersey registration involves any infraction of the laws of New Jersey, that aspect of the matter cannot be dealt with in this proceeding.

When the plaintiff was ordered to Washington for duty in February, 1932, it happened that his tour of duty brought him home, to the place of his birth and his chosen residence.

To that important extent he differed from Mr. Downs, Dr. Rollings, Mr. Deming, and other parties litigant in our courts, who were stationed in Washington upon official business but maintained their legal residence elsewhere, which it is usually advantageous for them to do. This plaintiff, being ordered here for duty, but being legally a resident here by birth and by choice, is entitled to proceed in the Supreme Court of the District of Columbia in a case of divorce based upon acts committed here.

■ The bill of complaint is grounded upon charges of adultery by the defendant with the corespondent Adrian, and as there are three young children of the marriage, no useful purpose could be served by a detailed discussion of the evidence, all of which has been duly considered. It clearly demonstrates that the defendant immediately upon her arrival in Washington, and while her husband was confined in a hospital by injuries received in the course of duty, entertained in her own house the corespondent and other men previously unknown at hours and in manners wholly inconsistent with her wifely duties.

That she frequently went out with one or other or more of these men, leaving her children locked up alone and unattended, and that on the occasion when her husband and his detectives entered the house unexpectedly, they found the defendant and the correspondent seated together on a couch in the unlighted parlor after midnight, when the lady was dressed in a costume described as beach pajamas.

Her explanation of her relations with the corespondent after so short an acquaintance was that she highly appreciated respectable adult companionship, while he explained the situation as an endeavor to amuse a woman apparently much neglected by her husband.

This explanation, though perhaps as good as any open to the parties in the circumstances, was unsatisfactory to the careful and experienced trial judge who heard the case bitterly contested in open court for a week, and whose opportunity for ascertaining the truth was so much better than our own.

He decided all the issues in favor of the

husband, and we agree with his decision. The defendant particularly contends that the evidence of the detectives is unworthy of belief and should be wholly disregarded, but while we are aware of the inherent frailty of the evidence of paid detectives in matrimonial causes, and two of these gentry testified for the plaintiff in this case, we find it sufficiently corroborated by other testimony and by circumstances to entitle it to be taken into the consideration of the court, which was done.

As we perceive no error in the record, the decree is affirmed.

Affirmed.