**Dora Lilian ALVES, Appellant,**

v.

**John ALVES, Appellee.**

**No. 4715.**

District of Columbia Court of Appeals.

Argued Oct. 13, 1969.

Decided Feb. 17, 1970.

---

1. The same counsel represented appellant at both hearings.

Jean M. Boardman, Washington, D. C., for appellant.

Richard H. Love, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and FICKLING and NEBEKER, Associate Judges.

HOOD, Chief Judge.

Appellant, Dora Lilian Alves, and appellee, John Alves, both British citizens, were married in England on December 13, 1947, and two children were born of the marriage. In September, 1962, appellant and appellee came to the United States where appellee had accepted a permanent position with the International Monetary Fund (hereinafter I.M.F.). The parties resided in Chevy Chase, Maryland, until marital difficulties arose leading to a separation in November, 1965. Appellee left the Maryland home and established residence in the District of Columbia on January 13, 1966. On June 9, 1966, the parties entered into a separation agreement providing, in pertinent part, that appellant would retain custody of the children with visitation rights accorded to the appellee; that appellee would contribute $600 each month to the appellant with $300 per month allocated to the appellant and $150 per month allocated to each child;[1] that appellant's share would be renegotiated if she became gainfully employed or established another residence; and that appellant and the children would continue to live in the Maryland home,

with the record title as tenants by the entirety, remaining unchanged until otherwise determined by the parties.

On February 3, 1967 appellee filed a complaint for an absolute divorce on the grounds of voluntary separation.[2] Appellant answered with a denial that appellee was a bona fide resident of the District of Columbia and counterclaimed for a divorce on the same grounds prayed for by appellee, for permanent custody of the children, for an increase in support for the children from $150 to $200 per month, for an award of alimony in the amount provided in the agreement and for the court to exercise in personam jurisdiction to require appellee to convey his interest in the Maryland home to appellant. At trial appellant abandoned her claim for divorce. The trial court found appellee to be a bona fide resident of the District of Columbia, awarded appellee an absolute divorce, and approved the separation agreement, finding it to be fair and reasonable and intended as a final settlement of all claims between the parties. However, the court did not incorporate the agreement into the decree and made no ward as to custody, child support, or alimony and declined to exercise jurisdiction to settle the rights of the parties in the Maryland home.

On this appeal, appellant contends the trial court erred: (1) in finding that appellee was a bona fide resident of the District of Columbia; (2) in not awarding her custody of the children; (3) in failing to increase the amount of child support; (4) in refusing to make an award of alimony; and (5) in finding it had no jurisdiction to deal with the Maryland property.

To maintain an action for divorce, one of the parties must be a bona fide resident of the District of Columbia for at least one year next preceding the commencement of the action.[3] The requirement of bona fide

---

1. Appellee also agreed to give appellant an additional $100 per month until she completed college but such payments would cease in any case two years from the date of the agreement.

2. D.C.Code 1967, § 16-904.

3. D.C.Code 1967, § 16-902.

residence has been construed as meaning one of the parties must be domiciled in the District of Columbia,[4] i. e., physical presence with an intent to abandon the former domicile and to remain in the District of Columbia for an indefinite period of time.[5] Since the question of domicile is primarily concerned with intention and the subsequent manifestations of conduct, we must review the facts.[6]

Before coming to the United States, appellee sold all his property and severed his ties with his employer, the Bank of England. Appellee obtained a British passport (good for ten years and renewable every five years) and prior to his entry into the United States he obtained the necessary visa. This was a special nonimmigrant visa (renewable every two years) permitting appellee to remain in the United States as long as he was employed by the I.M.F. During his stay in the United States, appellee, at any time, had the right to apply to the Attorney General for a readjustment of his status to become a permanent resident.[7] Though appellee testified the I.M.F. does not encourage its employees to become permanent residents, there was no evidence to indicate appellee would have lost his job if for some reason he applied for permanent residence. In any case, appellee apparently saw no reason to have his status readjusted as he was satisfied with his position and it appeared to appellee that he could remain in his position for an indefinite time. Thus, appellee testified that when the parties separated, he moved into the District of Columbia in order to be near his place of employment and close enough to the children to visit with them. From the record it seems that appellee's only connection with Great Britain was his retention of English citizenship.[8]

Appellant concedes that an alien can acquire a domicile in the United States. However, appellant contends the appellee did not have the legal capacity to form an intention to become a domiciliary of the District of Columbia since he was living here at the grace of Great Britain and the United States. It is further argued by appellant that the appellee must obtain admittance as a permanent resident before he can become domiciled in the District of Columbia. We do not agree.

The relationship between an alien[9] and a jurisdiction such as the District of Columbia, and an alien and the United States are not of equal significance.[10] Domicile is concerned with one's physical presence in a particular locality and the "nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance."[11] It is the appellee's connection with the District of Columbia and the legal rights and duties which accompany his presence here that is of importance. Appellee's retention of British citizenship does not preclude his becoming domiciled in the District of Columbia.[12]

4. Gullo v. Gullo, D.C.App., 192 A.2d 126 (1963); Stephenson v. Stephenson, D.C. Mun.App., 134 A.2d 105 (1957).

5. Heater v. Heater, D.C.Mun.App., 155 A. 2d 523 (1959); Jones v. Jones, D.C. Mun.App., 136 A.2d 580 (1957).

6. Dennett v. Dennett, 63 App.D.C. 252, 71 F.2d 975 (1934).

7. 8 U.S.C. § 1255 (1965).

8. Great Britain had no control over appellee's position with the I.M.F.

9. An alien is defined as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a) (3) (1953).

Appellee is a nonimmigrant alien under the Immigration and Nationality Laws. 8 U.S.C. § 1101(a) (15) (G) (iv) (1953).

10. See State ex rel. Phelps v. Jackson, 79 Vt. 504, 65 A. 657 (1907).

11. Williams v. North Carolina, 325 U.S. 226, 229, 65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366 (1945).

12. Hauenstein v. Lynham, 100 U.S. 483, 25 L.Ed. 628 (1880); State ex rel. Duckworth v. District Court, 107 Mont. 97, 80 P.2d 367 (1938); Sedgwick v. Sedgwick, 50 Colo. 164, 114 P. 488 (1911); Vachikinas v. Vachikinas, 91 W.Va. 181, 112 S.E. 316 (1922); Cohen v. Cohen, 26 Del. 361, 84 A. 122 (1912).

Nor do we think that the fact appellee did not apply for permanent residence in the United States forecloses the possibility of his being domiciled in the District of Columbia. Under the Immigration and Nationality Laws it is possible, for a variety of reasons, for an alien to remain in the United States for many years, as appellee has done, without applying for permanent residence.[13] Furthermore, to impose such a requirement would have the effect of denying appellee access to our courts without regard to the period of time he has resided in the District of Columbia,[14] his intentions in moving into the District of Columbia and other relevant factors. Just as aliens are subject to the jurisdiction of our courts, they should be entitled to invoke the jurisdiction of the courts for their own benefit.[15]

■ Similar reasoning underlies any discussion of appellee's entrance into the United States on a nonimmigrant visa, renewable every two years, to work for the I.M.F. and its bearing on the issue of domicile.[16] "The object of requiring visas, or at least one of the most important objects, has been to afford a preliminary investigation of the fitness of the alien to enter the country before he comes to our shores and there applies for admission."[17] A visa is a document of entry required of aliens by the United States Government and is a matter under the control of the Government. It has little relevance to the question of domicile. The fact that appellee entered the United States on a nonimmigrant visa to work for the I.M.F. does not preclude a finding that appellee could become domiciled in the District of Columbia.[18]

■ Appellee maintained his British citizenship but otherwise severed all his ties with Great Britain. He testified that he intended to remain in his position with the I.M.F. indefinitely and could foresee no reason why he would be called upon to leave this position. In fact, appellee had his visa renewed several times previous to the institution of this action, an indication of his intent to remain in the United States for an indefinite period of time.[19] One of the main reasons appellee moved into the District of Columbia was to be near his office at the I.M.F. By intending to remain indefinitely in the District of Columbia appellee negatived a definite intent to return

13. *See* 8 U.S.C. § 1101 et seq. (1953).

14. *Cf.* Cairns v. Cairns, 29 Colo. 260, 68 P. 233 (1902).

15. Lau Ow Bew v. United States, 144 U.S. 47, 12 S.Ct. 517, 36 L.Ed. 340 (1892); Carlisle v. United States, 83 U.S. 147, 21 L.Ed. 426 (1873). Cf. 42 U.S.C. § 1981 (1964). This section protects aliens as well as citizens of the United States. Toras Takahashi v. Fish & Game Commission, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948); Roberto v. Hartford Fire Ins. Co., 177 F.2d 811 (7th Cir. 1949), cert. denied, 339 U.S. 920, 70 S.Ct. 622, 94 L.Ed. 1343 (1950).

16. Appellant also touches upon the effect of appellee's having to obtain a British passport in order to leave Great Britain. We dismiss as without merit any contention that the passport has any bearing on the issue before us. The nature of this document is described by the Supreme Court in Urtetiqui v. D'Arcy, 34 U.S. 692, 699, 9 L.Ed. 276 (1835): "It is a document which, from its nature and object, is addressed to foreign powers; purporting only to be a request that the bearer of it may pass safely and freely; and is to be considered rather in the character of a political document, by which the bearer is recognized in foreign countries as an American citizen. * * * "

17. United States ex rel. Strachey v. Reimer, 101 F.2d 267, 269 (2d Cir.1939).

18. *See* Gosschalk v. Gosschalk, 48 N.J. Super. 566, 138 A.2d 774 (1958), aff'd, 28 N.J. 73, 145 A.2d 327 (1958); Jacoubovitch v. Jacoubovitch, 279 App.Div. 1027, 112 N.Y.S.2d 1 (1952). *See also* England v. England, 205 Misc. 645, 129 N.Y.S.2d 167 (1954); Taubenfeld v. Taubenfeld, 276 App.Div. 873, 93 N.Y.S.2d 757 (1949).

19. The visa was last renewed, prior to trial, on August 11, 1967, while appellee was residing in the District of Columbia.

to Great Britain.[20] At best it might be argued appellee had a floating intention to return to Great Britain conditioned upon an uncertain event—his dismissal from the I.M.F.—which event may never occur. But such a floating intention [21] to return to Great Britain is not sufficient to require a holding that appellee was still domiciled in Great Britain.[22] Only if appellee had a definite and fixed intention of returning to Great Britain could it be said he did not abandon his English domicile.[23] There is no evidence to indicate appellee definitely intended to return to Great Britain but rather all the evidence leads to the conclusion that appellee intended to remain in the District of Columbia for an indefinite time. We think the trial court correctly found appellee to have been a bona fide resident of the District of Columbia for purposes of this divorce action.

Appellant claims the trial court abused its discretion in not awarding her custody of the two minor children. Appellee did not challenge the appellant's right to have custody of the children,[24] but since appellant preferred to have a judicial award of custody, we think that at the outset it is necessary to determine whether the trial court had jurisdiction to make such an award. In Schiller v. Schiller, D.C.App., 194 A.2d 665 (1963), we reviewed the various reasons offered by the courts for assuming jurisdiction in custody matters. We did not reach the question of the court's jurisdiction when it had in personam jurisdiction over both parents and the children were neither present in nor domiciled in the District of Columbia; instead we held the Maryland courts could best protect the interests of the children.

■ Here, both appellant and appellee personally appeared before the trial court. The children were living with the appellant in Maryland and took the domicile of their mother.[25] Appellee was domiciled in the District of Columbia. We hold that the trial court has jurisdiction to make an award of custody when both parents are personally before the court, even if the children are neither domiciled in nor living in the District of Columbia.[26]

In personam jurisdiction over both parents is only one of the bases for the trial court's exercise of jurisdiction to

20. Rogers v. Rogers, 76 U.S.App.D.C. 297, 130 F.2d 905 (1942).

21. It is not clear whether appellee ever intended to return to Great Britain even if he were no longer employed by I.M.F. Appellee could have applied for a readjustment of his status if he were not working for the I.M.F.

22. Gilbert v. David, 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360 (1915) ; Rosenberg v. Commissioner of Internal Revenue, 59 App.D.C. 178, 37 F.2d 808 (1930).

23. Weitknecht v. District of Columbia, 90 U.S.App.D.C. 291, 195 F.2d 570 (1952), cert. denied, 344 U.S. 837, 73 S.Ct. 47, 97 L.Ed. 651; Rogers v. Rogers, 76 U.S.App.D.C. 297, 130 F.2d 905 (1942).

24. The separation agreement provided, "The wife shall be entitled to the custody and control of the children. Timothy and Caroline, until they severally attain emancipation or adult age * * *."

In his answer to appellant's counterclaim for custody, the appellee did not "controvert the defendant's care and custody of the children."

25. Oxley v. Oxley, 81 U.S.App.D.C. 346, 159 F.2d 10 (1946).

26. Gramelspacher v. Gramelspacher, 204 Va. 839, 134 S.E.2d 285 (1964) ; Sampsell v. Superior Court, 32 Cal.2d 763, 197 P.2d 739 (1948) ; Stephens v. Stephens, 53 Idaho 427, 24 P.2d 52 (1933). The justification for this rule was aptly expressed in Anderson v. Anderson, 74 W.Va. 124, 81 S.E. 706, 707–708 (1914):
 That the children may not have been within the jurisdiction of the court at the time of the institution of the suit or entry of the decree is immaterial, since the parties litigant were the father and the mother, and the cause of action, the right of custody, in so far as it affected the children, was between them, and the court had full jurisdiction over them with power to render a personal decree.

award custody. To limit jurisdiction only to those instances wherein the children are physically present or domiciled in the District of Columbia would be to ignore the realities of domestic life after a separation occurs when the husband and wife often live apart in different jurisdictions. In the best interests of all concerned we think the court should not be confined to any hard and fast rules of jurisdiction.[27]

 It is also argued by appellant that it was necessary for the trial court to make an order of custody to establish "a basic judgment which under the provisions of § 16–914 of the Code would have remained open for further orders relating to custody". This is a mistaken reading of D.C.Code 1967, § 16–914. The jurisdiction acquired by the trial court in a proceeding for divorce is one of continuing jurisdiction over the issues of custody and child support.[28] This is true even though the decree is silent as to custody or child support.[29] Nor does the separation agreement preclude the trial court from a later determination of custody or child support.[30]

█ Appellee did not question appellant's right to custody of the children[31] and did not attempt to introduce any evidence that the welfare of the children would be compromised by their being in the custody of appellant. In these circumstances the trial court did not abuse its discretion in refusing to make a judicial award of custody to appellant.

█ Appellant contends the trial court erred in failing to award support for the minor children. The separation agreement provided that $150 per month would be allocated to each child. At trial, appellant requested an increase to $200 per month for each child. After hearing the testimony of the parties and reviewing their financial status and the needs of the children, the court decided that the circumstances did not warrant an increase in the amount of child support.

In Blumenthal v. Blumenthal, D.C.Mun. App., 155 A.2d 525, 526–527 (1959), this court considered the effect of an agreement for child support upon the power of the trial court to order an increase in support:

It requires no citation of authority for the propositions that the father has a legal obligation to support his minor children; that neither parent, by agreement of their own, can oust the jurisdiction of the court to award a larger amount than agreed upon, and that the court, in arriving at its decision, will be governed by the present needs of the children and the father's ability to provide for them.

Indeed the trial court recognized the agreement did not foreclose the issue of an increase in child support when it stated: "That it [separation agreement] deals with the rights of the children, but the interest of said children is not foreclosed." As in custody matters the trial court has continuing jurisdiction to order an increase in support if the circumstances

---

27. The reasons for not having hard and fast rules of jurisdiction in custody matters are clearly stated in Justice Traynor's opinion in Sampsell v. Superior Court, 32 Cal.2d 763, 197 P.2d 739 (1948).

28. Demonet v. Burkart, 23 App.D.C. 308 (1904).

29. Trotter v. Trotter, 87 U.S.App.D.C. 213, 183 F.2d 997 (1950); Elkins v. Elkins, 55 App.D.C. 8, 299 F. 690 (1924).

30. Emrich v. McNeil, 75 U.S.App.D.C. 307, 126 F.2d 841, 146 A.L.R. 1146 (1942).

31. At trial, appellee was agreeable to a judicial award of custody to appellant. On appeal, appellee urges this court to hold that the trial court was without jurisdiction to make such an award. We do not find appellee's argument convincing.

reveal such a necessity. Appellant testified fully as to her financial situation and her ability to care for the children on the sum of $150 per month for each child. We cannot say the trial court abused its discretion.

▪ Appellant acknowledges that the agreement is binding on her as to the amount of her support—$300 per month— but contends the trial court should have ordered appellee to pay this amount as alimony. By statute,[32] the court, upon a divorce granted to the husband, may require the husband to pay alimony to the wife, "if it seems just and proper." This section does not compel the court to award alimony to the wife but rather permits the court to use its discretion in making this determination.

▪ The court was apparently impressed by the provisions in the agreement calling for renegotiation of the wife's support in the event of certain contingencies and found the agreement to have been entered into voluntarily, was fair and reasonable, and intended as a final disposition of the rights and claims of the parties. The agreement was not incorporated into the decree, a matter entirely within the discretion of the trial court.[33] However, an agreement voluntarily made and intended as a final settlement of the property rights and the claims of the parties is binding on the parties and will bar any further claims thereto on the part of either party.[34]

The courts look favorably upon separation agreements, not only to avoid litigation,[35] but to allow the parties, who are often better able to understand their own financial situation than are the courts, to resolve their problems in an amicable manner. When the parties act in good faith, as they did here, and the amount agreed upon for the support of the wife is reasonable, there is no reason why the trial court cannot leave the parties to continue their relationship under the agreement.

▪ Finally, appellant requests this court to remand the case to the trial court for a hearing on the adjudication of the rights of the parties in the Maryland home held by the parties as tenants by the entirety. At the time the judgment below was entered, the decision in Argent v. Argent, 130 U.S.App.D.C. 46, 396 F.2d 695 (1968), had not yet been handed down and the trial court declined to exercise jurisdiction to settle the rights of the parties in the Maryland property.

We think the trial court acted properly in refusing to consider the rights of the parties with respect to the Maryland property but not on the grounds asserted by the court. The statute [36] on dissolution of property rights provides:

Upon the entry of a final decree of annulment or absolute divorce, *in the absence of a valid antenuptial or postnuptial agreement in relation thereto,* all property rights of the parties in joint tenancy or tenancy by the entirety shall stand dissolved * * *. (Emphasis supplied.)

The separation agreement contains the following language, "It is contemplated that the Wife will continue to reside at those premises with the children; and, until otherwise determined by the parties, the ownership and record title of that property shall remain unchanged."

This agreement is the kind of agreement referred to in the statute and has the effect of permitting the parties to deal with their property as they wish by with-

---

32. D.C.Code 1967, § 16–913.

33. Montalbo v. Montalbo, D.C.Mun.App., 175 A.2d 786 (1961).

34. Rosenbaum v. Rosenbaum, D.C.App., 210 A.2d 5 (1965); Le Bert-Francis v. Le Bert-Francis, D.C.Mun.App., 175 A.2d 602 (1961).

35. Le Bert-Francis v. Le Bert-Francis, D.C.App., 194 A.2d 662 (1963).

36. D.C.Code 1967, § 16–910.

drawing the property from the operation of the statute. Thus we do not need to decide whether the trial court could have exercised jurisdiction to deal with the property under the decision in Argent v. Argent, *supra.*

Affirmed.