**Mariano ARCAYA, Plaintiff,**

v.

**Delfin Enrique PAEZ, Defendant.**

United States District Court
S. D. New York.
Oct. 15, 1956.

**466**

Mariano Arcaya, New York City, pro se.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, Ernest A. Gross, New York City, of counsel, for defendant.

DIMOCK, District Judge.

This is a libel action. Plaintiff is a Venezuelan citizen residing in New York. Defendant now moves for summary judgment dismissing the complaint, on the ground of immunity of defendant by virtue of his status as Consul General of Venezuela in New York and his status as permanent representative of Venezuela to the United Nations with the rank of Envoy Extraordinary and Minister Plenipotentiary, and on the further ground that the court lacks jurisdiction of the subject matter because of defendant's status as such permanent representative. Defendant also moves "[t]o dismiss the action because the complaint fails to state a claim against defendant upon which relief can be granted, as more fully appears

from all the documents attached" to the notice of motion.

An accredited resident representative to the United Nations, with the rank of Envoy Extraordinary and Minister Plenipotentiary is entitled in the territory of the United States to all privileges and immunities accorded to diplomatic envoys accredited to the United States. The Agreement Between the United Nations and the United States of America Regarding the Headquarters of the United Nations, Section 15, P.L. 357, 80th Congress, First Session, Joint Res. Aug. 4, 1947, c. 482, 61 Stat. 756, 762, provides:

> "(1) Every person designated by a Member as * * * a resident representative with the rank of ambassador or minister plenipotentiary,
>
> * * * * * *
>
> "(4) * * * shall, whether residing inside or outside the headquarters district, be entitled in the territory of the United States to the same privileges and immunities, subject to corresponding conditions and obligations, as it accords to diplomatic envoys accredited to it."

Putting aside for the present the motion to dismiss for failure to state a claim, defendant raises questions of two kinds: the question of jurisdiction of the court over suits against diplomatic representatives and the question of the immunity of diplomatic representatives even though the court may have jurisdiction.

On the question of jurisdiction, the power of the District Court to entertain an action against a consul seems to be conceded, as indeed it must be perforce section 1351 of title 28 of the United States Code. The power to entertain actions against "ambassadors or other public ministers of foreign states * * * not inconsistent with the law of nations" is, however, vested exclusively in the Supreme Court by section 1251.

On the question of immunity, a consul is not immune from suit except when the action is based upon acts which

he has committed within the scope of his duties. The Anne, 3 Wheat. 435, 445, 4 L.Ed. 428; The Sao Vicente, 260 U.S. 151, 155, 43 S.Ct. 15, 67 L.Ed. 179; Lyders v. Lund, D.C.N.D.Cal., S.D., 32 F.2d 308; Carl Byoir & Associates v. Tsune-Chi Yu, 2 Cir., 112 F.2d 885, 886; Carrera v. Carrera, 84 U.S.App.D.C. 333, 174 F.2d 496, 498.

An ambassador or minister is, however, absolutely immune from suit even though it be based upon personal transactions. Magdalena Steam Navigation Company v. Martin, 2 El. & El. 94.

■ The court must, of course, determine its own jurisdiction without reference to the views of the Department of State. The questions of the diplomatic status enjoyed by a given defendant and the immunity to be accorded him are, however, questions where a determination of the Department of State is binding upon the court. United States of Mexico v. Schmuck, 293 N.Y. 264, 56 N.E. 2d 577.

Having stated these principles, I return to the record in the particular case. The complaint alleges that, while plaintiff was exiled from Venezuela for political reasons, defendant publicized certain Venezuelan newspaper articles therein quoted which reflect unfavorably on the political, professional, social and moral standing of plaintiff. This is alleged to have been accomplished by posting in the consulate, by circularization to its mailing list and by personal distribution to visitors to the consulate and others.

When the action was commenced on March 16, 1956, defendant's only office under the Government of Venezuela was consul general. Nevertheless he communicated with the Venezuelan Ambassador in Washington and, as a result, the Venezuelan Ambassador wrote the Secretary of State a letter, dated April 10, 1956, requesting that the Department of State suggest to this court that the suit should be dismissed upon a plea of immunity on behalf of the Government of Venezuela. By a letter dated three days later, the Minister of Foreign Relations of Venezuela advised defendant, that, by order of the President and by order of that Ministry, defendant had been appointed Alternate Representative of the Delegation of the Republic of Venezuela before the United Nations with a rank of Envoy Extraordinary and Minister Plenipotentiary.

Upon the argument of the instant motion on May 17, 1956, the United States Attorney presented a copy of the letter of April 10, 1956, from the Venezuelan Ambassador to the Secretary of State, above referred to. That letter, it will be remembered, requested a suggestion to this court that the suit should be dismissed upon a plea of immunity on behalf of the Government of Venezuela. The paper was, however, presented to the court with the statement by the United States Attorney that it was transmitted by the Department of State without comment. The letter, having been written before the appointment of defendant as alternate representative of Venezuela at the United Nations, based its plea solely on the position of defendant as consul general. While not covered by the letter, the claim of immunity based on status as a United Nations representative was strongly urged on the argument. At the hearing and thereafter plaintiff submitted affidavits, argument and authorities, including In re Cloete, 65 L.T. 102, in support of his position that the appointment should be disregarded as merely colorable and made for the sole purpose of conferring immunity on defendant. Defendant submitted answering material.

On July 6, 1956, I wrote the Secretary of State calling attention to the new contention that was being made and the fact that the Department had expressly withheld comment when immunity was claimed only on a basis of consular status. I inquired whether the Department desired to make any comment to the court in the premises. Both parties to the action thereafter communicated with the Department of State in support of their contentions. On September 17, 1956, Hon. Herman Phleger, the Legal Adviser

to the State Department, replied to me by letter which, after referring to the previous correspondence, stated:

"On July 10, 1956, a note, No. 1500, was addressed to the Secretary of State by the Venezuelan Ambassador in Washington. The Ambassador requested the Department of State to suggest to your court the status of immunity of Minister Páez.

"The Department of State desires to submit for your consideration the following comments in the premises:

"1. After the receipt by the Department of notification, dated April 26, 1956, of his appointment by his Government, an identity card was issued to Mr. Páez which he received on May 3, 1956, and which stated that he was entitled to the privileges and immunities set forth in Public Law 357, 80th Congress, approved by the President on August 4, 1947.

"2. The Department of State is of the opinion that the subsequent acquisition by Mr. Páez of diplomatic status would not defeat any jurisdiction with respect to him which may have been acquired on March 16, 1956, by the United States District Court for the Southern District of New York in the action. The Department of State makes no comment on the question of whether the court at that time did in fact acquire jurisdiction over Mr. Páez.

"3. It would appear, however, that Mr. Páez' present status as a diplomatic representative of the Republic of Venezuela to the United Nations may not be questioned and that Mr. Páez is, therefore, at the present time entitled to all the privileges and immunities granted such representatives under Public Law 357, 80th Congress."

I understand from this letter that the questions that the Department undertook to answer were (1) whether subsequent acquisition by defendant of diplomatic status would defeat the court's previously acquired jurisdiction of the subject matter and (2) whether defendant is entitled to all of the privileges and immunities of a representative to the United Nations. The first is answered in the negative and the second in the affirmative.

I do not feel that I ought to accept without examination a determination by the Department of State that the court did not lose any jurisdiction it had theretofore possessed when defendant was appointed representative to the United Nations. The determination that defendant is entitled to the privileges and immunities of the office of representation to the United Nations does, however, conclude me under the doctrine of Matter of United States of Mexico v. Schmuck, 293 N.Y. 264, 56 N.E.2d 577, supra. The question whether the appointment was colorable is therefore no longer open before me.

That leaves for my decision the question (1) whether the court obtained jurisdiction of the subject matter before defendant's appointment as representative and, if so, the question (2) whether jurisdiction was ousted by that appointment and, if not, the question (3) whether defendant has immunity from this suit as consul and, if not, the question (4) whether one of the immunities of a representative to the United Nations is immunity from further prosecution of a suit begun before the acquisition of status as such representative.

The answer to question one, whether the court obtained jurisdiction of the subject matter, must, as I said above, be in the affirmative. Section 1351 of title 28 of the United States Code expressly gives jurisdiction of suits against consuls to the district courts.

The second question, whether that jurisdiction was ousted by defendant's appointment as representative, was correctly answered in the negative by the Legal Adviser to the Department of State. It is true that the jurisdiction of the Supreme Court over suits against ministers is exclusive under section 1251 of title 28 of the United States Code. It

is also true that it has been held (although I have some doubt as to the correctness of the ruling) that the bestowal of the *privileges and immunities* of diplomatic envoys upon representatives to the United Nations, by section 15 of the Joint Resolution of August 4, 1947, above quoted, deprives all courts except the Supreme Court of jurisdiction of suits against them. Friedberg v. Santa Cruz, 274 App.Div. 1072, 86 N.Y.S.2d 369. Granting, however, the correctness of that ruling that the Supreme Court alone would have jurisdiction of a suit originally instituted against a representative to the United Nations, the acquisition of that status by a defendant after the district court had obtained jurisdiction of the subject matter of the suit would not oust the district court of jurisdiction.

In People of Porto Rico v. Ramos, 232 U.S. 627, 34 S.Ct. 461, 462, 58 L.Ed. 763, an action between two individuals, the plaintiff, a citizen of Porto Rico, and the defendant, a citizen of Great Britain, had been validly begun. Porto Rico intervened in the action as a party defendant alleging that it was interested in the property claimed by the plaintiff. The plaintiff then amended his complaint to make Porto Rico the sole defendant. Porto Rico moved to dismiss the complaint on the ground of sovereign immunity and lack of diversity jurisdiction. While holding that Porto Rico had waived any claim to immunity by voluntarily intervening, the court also stated:

"There is an assignment of error based on the proposition that by the amendment of the complaint the plaintiff and Porto Rico became the sole parties to the action, and they, being citizens of Porto Rico, the court lost jurisdiction of it. The proposition is not urged by plaintiff in error in its brief, and if the proposition did not raise a question of jurisdiction, we might pass it without comment. It is, however, enough to say of it that the original defendant, Wood, was properly sued, he then being a subject of Great Britain, and in possession of the land.

Porto Rico, subsequently becoming a party, did not oust the jurisdiction. Phelps v. Oaks, 117 U.S. 236, 6 S.Ct. 714, 29 L.Ed. 888; Hardenbergh v. Ray, 151 U.S. 112, 14 S. Ct. 305, 38 L.Ed. 93."

In the Phelps case, cited by the Supreme Court in the above quotation, the Supreme Court was presented with the question of whether a substitution of a new defendant, on motion of the original defendant, destroys the valid diversity jurisdiction previously obtained between the two original parties to the action. In unequivocal language, which is applicable to this motion, the Supreme Court stated:

"Much less can the plaintiff's right to prosecute his action in the courts of the United States, once vested, be defeated by imposing upon him an adversary against whom he cannot maintain the jurisdiction of these tribunals." 117 U.S. at page 240, 6 S.Ct. at page 716.

A question similar to the one now before me was decided by the District Court of Appeals of California, in Earle v. De Besa, 109 Cal.App. 619, 293 P. 885. There, an action had been validly commenced against an alien in the state courts of California. Some time before the trial was concluded, the defendant was appointed Consul General of the Republic of Peru. The defendant thereupon moved to dismiss the complaint on the ground that the state court had no jurisdiction over actions against a consul, citing the forerunner of 28 U.S.C. § 1351 which gives exclusive jurisdiction over actions against consuls to the federal courts. The California courts denied the motion, holding that, since valid jurisdiction had been obtained at the commencement of the action, it was not destroyed by a subsequent change of status of the defendant.

I therefore do not believe that defendant's appointment as representative to the United Nations affected the jurisdiction of this court.

The third question, whether defendant was immune when this suit was brought,

involves the determination of an issue of fact. The State Department, though requested to suggest this immunity to this court by the Venezuelan Ambassador, merely submitted a copy of his letter without comment. The determination of the question is therefore left to the courts.

As I stated at the beginning of this opinion, a consul is immune from only such suits as are grounded upon transactions within the scope of his official authority. Mr. Justice Story made a classic statement of the law in The Anne, 3 Wheat. 435, 445, 4 L.Ed. 428, which was adopted in The Sao Vicente, 260 U.S. 151, 155, 43 S.Ct. 15, 67 L.Ed. 179. Mr. Justice Story said:

"We are of opinion, that his office confers on him no such legal competency. A consul, though a public agent, is supposed to be clothed with authority only for commercial purposes. He has an undoubted right to interpose claims for the restitution of property belonging to the subjects of his own country; but he is not considered as a minister, or diplomatic agent of his sovereign, intrusted, by virtue of his office, with authority to represent him in his negotiations with foreign states, or to vindicate his prerogatives. There is no doubt, that his sovereign may specially intrust him with such authority; but in such case his diplomatic character is superadded to his ordinary powers, and ought to be recognized by the government within whose dominions he assumes to exercise it. There is no suggestion or proof of any such delegation of special authority in this case; and therefore, we consider this claim as asserted by an incompetent person, and on that ground, it ought to be dismissed."

From that statement we learn that a consul's duties are commercial but that they may be enlarged by special authority. To be effective such an enlargement must, however, "be recognized by the government within whose dominions he assumes to exercise it". The Venezuelan Ambassador here asserted such an enlargement in his letter of April 10, 1956, to the Secretary of State. He said:

"I communicated to Mr. Páez my belief that once the newspapers and the American reading public had been informed of the truth concerning the subject matter of Dr. Arcaya's misrepresentations and concerning Dr. Arcaya's own political history, his baseless complaints and accusations would thenceforth, seen in proper perspective, lose all credibility and news value.

"It was therefore in pursuance of his duties as a responsible agent of the Republic of Venezuela that Mr. Páez wrote a letter to 'The New York Times' published in the issue of March 12, 1956 and it was also pursuant to those duties that he informed appropriate persons concerning information appearing in the Venezuelan newspapers which served to clarify the matters involved in Doctor Arcaya's charges. The Government of Venezuela feels not only that it was within the duties of Mr. Páez to do so but that he would have been remiss in carrying out his official instructions had he failed to do so."

If the alleged enlargement of defendant's duties had been "recognized by the government within whose dominions" it was assumed to be exercised, the Department of State would surely have so advised the court instead of submitting the letter without comment.

I must therefore decide the question whether, on the record before me, the acts with which defendant is charged were within his commercial duties. As Judge Lowell said in Lorway v. Lousada, D.C.Mass., 15 Fed.Cas. pages 919, 920, No. 8517:

"No doubt our government, in all its departments, is bound to accord to the consul, after the executive authority has received him, the free ex-

ercise of all his consular authority, such as may exist by custom, treaty, or general international law. But, after he has done an act professedly official, I see no reason why an individual may not try the question here, whether the act was within the scope of his authority."

I can find nothing to indicate that defendant's alleged acts were within the scope of his authority. I must therefore deny defendant's motion for summary judgment dismissing the case insofar as the motion is based upon diplomatic immunity of defendant as consul general.

That leaves the fourth and final question, whether defendant's immunity as a "diplomatic envoy", conferred by virtue of his status as representative to the United Nations under the terms of section 15 of the Joint Resolution of August 4, 1947, prevents the prosecution of this action against him.

This involves a question which, so far as revealed by the researches of any of those concerned, is novel: where a court has acquired jurisdiction over a defendant, what is its duty when that defendant obtains diplomatic immunity?

It is clear that the court may not issue its process against such a defendant so long as he retains his diplomatic immunity. Section 4063 of the Revised Statutes, 22 U.S.C. § 252, provides:

"Whenever any writ or process is sued out or prosecuted by any person in any court of the United States, or of a State, or by any judge or justice, whereby the person of any ambassador or public minister of any foreign prince or State, authorized and received as such by the President, or any domestic or domestic servant of any such minister, is arrested or imprisoned, or his goods or chattels are distrained, seized, or attached, such writ or process shall be deemed void."

This provision is a codification of the act of April 30, 1790, c. 9, § 25, 1 Stat. 117, which was drawn from the statute 7 Anne, c. 12. That, in turn, was declaratory of, and did not alter, the law of nations. In re Baiz, 135 U.S. 403, 420, 10 S.Ct. 854, 34 L.Ed. 222, Magdalena Steam Navigation Company v. Martin, 2 El. & El. 94, 114, supra.

In the latter case Lord Campbell had occasion to discuss the rationale of diplomatic immunity under the law of nations. There the Envoy Extraordinary and Minister Plenipotentiary of the Republics of Guatemala and New Granada was sued upon a cause of action which accrued after he had acquired that status. In granting judgment for the defendant, Lord Campbell said, p. 111, "The great principle is to be found in Grotius de Jure Belli et Pacis, 2, c. 18, s. 9, 'Omnis coactio abesse a legato debet' " and added at pp. 113–114:

"Mr. Bovill, being driven from his supposition that the writ in this case might be sued out only to save the Statute of Limitations, by the fact that it had been served upon the defendant, and by the allegation in the plea that it was sued out for the purpose of prosecuting this action to judgment, strenuously maintained that at all events the action could be prosecuted to that stage, with a view to ascertain the amount of the debt, and to enable the plaintiffs to have execution on the judgment when the defendant may cease to be a public minister. But although this suggestion is thrown out in the discussion which took place in the Common Pleas, in Taylor v. Best (14 Com. B 487, 493 (per Maule J.), it is supported by no authority; the proceeding would be wholly anomalous; it violates the principle laid down by Grotius; it would produce the most serious inconvenience to the party sued; and it could hardly be of any benefit to the plaintiffs. In the first place, there is great difficulty in seeing how the writ can properly be served, for the ambassador's house is sacred, and is considered part of the territory of the Sovereign he represents; nor could the ambassador be safely stopped in the street to receive

the writ, as he may be proceeding to the Court of our Queen, or to negotiate the affairs of his Sovereign with one of her ministers. It is allowed that he would not be bound to answer interrogatories, or to obey a subpoena requiring him to be examined as a witness for the plaintiffs. But he must defend the action, which may be for a debt of 100,000l., or for a libel, or to recover damages for some gross fraud imputed to him. He must retain an attorney and counsel, and subpoena witnesses in his defence. The trial may last many days, and his personal attendance may be necessary to instruct his legal advisers. Can all this take place without 'coactio' to the ambassador? Then, what benefit does it produce to the plaintiffs? There can be no execution upon it while the ambassador is accredited, nor even when he is recalled, if he only remains a reasonable time in this country after his recall."

Lord Campbell was thus of the opinion that the immunity of ambassadors was not limited to freedom from service of process. He regarded the ambassador's protection from the necessity of retaining an attorney in an action for libel, of subpoenaing witnesses for his defense and of personally attending the trial where he might be needed to instruct his legal advisors, as part of the protection to which he was entitled under the law of nations. No one has suggested that any court has ever held otherwise or suggested any good reason why a court should do so.

■ I am clear therefore that this action should not at present be permitted to proceed against this defendant. I do not believe, however, that the action should be dismissed. If the summons had been served on defendant after he had attained the rank of a diplomatic envoy he would have been the victim of an unlawful act upon which plaintiff could base no rights. Here, however, plaintiff has lawfully served a summons on him. By that act plaintiff obtained at least two valuable rights: the right to prosecute the action without further service of process and the right to prosecute the action despite the subsequent expiration of the period limited for the institution of an action for libel. Must plaintiff lose these rights because of defendant's promotion? I see no reason for such a deprivation. It will not interfere with defendant's efficiency as alternate representative to the United Nations to have the action pend dormant while he fulfills the duties of his new office. If and when defendant loses his status and the immunity that goes with it, plaintiff ought to be allowed to proceed with his action.

Something like that procedure was adopted by Eve, J., in In re Suarez, [1917] 2 Ch. 131. There the Bolivian Minister had submitted himself to the jurisdiction of the court up to the point where a summons was issued for leave to proceed to execution. At that point he asserted his diplomatic immunity. Mr. Justice Eve held the plea good but added, p. 139, "I think the proper course is to make no order on the summons except that it do stand over generally, with liberty to restore in the event of the defendant ceasing to hold an office to which the immunity he asserts is attached." The minister having ceased his functions, the order was subsequently restored. Suarez v. Suarez [1918] 1 Ch. 176.

■ Though it is probably unimportant, I see no reason for the application here of the rule that extends an ambassador's immunity for the time reasonably necessary to permit him to depart after loss of status. The purpose of that rule is to protect him against the service of process until he gets away. Here he needs no protection against the prosecution of the pending action until he gets away. On the contrary prosecution of the action while he is here is more favorable to him than prosecution after he has left.

The motion is therefore granted to the extent of staying the action for such time and only for such time as defendant retains his status as Alternate Resident

Representative of the Republic of Venezuela to the United Nations with the rank of Envoy Extraordinary and Minister Plenipotentiary.

Defendant's motion to dismiss on the ground of failure to state a claim was not briefed or argued and it is denied without prejudice to renewal, if and when the prosecution of this action is resumed. A separate disposition of defendant's motion to stay the taking of depositions is unnecessary since all proceedings including the taking of depositions have been stayed by the direction in the preceding paragraph.