Louis B. Heller, J.
In this action for divorce, defendant moves to quash the summons served on him and to dismiss the suit upon the grounds that:
(1) the court lacks jurisdiction over the person of the defendant (CPLR 3211, subd [a], par 8) since, as a consul of Austria, he is entitled to sovereign or diplomatic immunity from all criminal and civil suits; and
(2) the court does not have jurisdiction of the subject matter of this action (CPLR 3211, subd [a], par 2) because neither party fulfills the residence requirements provided for in section 230 of the Domestic Relations Law.
The parties were married in Austria in 1964 and have three children of this marriage. They arrived in the United States and took up residence in New York State in September, 1973 as nonimmigrant aliens under section 1101 (subd [a], par [15], cl [J]) of title 8 of the United States Code. At that time, the defendant came as a professor on an exchange Fulbright program. The plaintiff and their children were admitted under his visa.
Shortly thereafter the defendant moved out of their marital premises. On September 15, 1974 he visited the children who were living with the plaintiff and without any warning took all three children to Austria.
The defendant informed plaintiff that he would return the children to her if she came to Austria, which she did on December 18, 1974. Plaintiff claims that defendant reneged on this agreement and gave her only one of the children. She thereupon returned to the United States with this child on January 24, 1975 as a student having nonimmigrant alien *337 status under section 1101 (subd [a], par [15], cl [F], subd [i]) of title 8 of the United States Code. She continued to reside in New York State upon her return, although there is some ambiguity as to exactly where in the State she has been living since then.
On July 14, 1975, the defendant returned to the United States with the other two children and upon his arrival at Kennedy Airport was personally served with the summons in this action. Subsequently, the two children were turned over to the plaintiff and all three have been living with her since.
The defendant was readmitted into the United States under a diplomatic passport as a nonimmigrant alien pursuant to section 1101 (subd [a], par [15], cl [A], subd [i]) of title 8 of the United States Code. He came as an Austrian Consul in New York City serving as Director of the Austrian Institute, a cultural arm of the Austrian Consulate General. He maintains both his office and living quarters at the Institute, located at 11 East 52nd Street, New York City.
Turning now to defendant’s first ground for dismissal and whether he is entitled to diplomatic immunity in this case, the Ambassador of Austria to the United States has written a note dated September 5, 1975 to the Department of State requesting such immunity for the defendant. The Ambassador’s request is founded on article XIII of the 1928 Treaty of Friendship, Commerce and Consular Rights between the United States and Austria (5 Treaties & Other Int Agreements of US 1776-1949, p 341). Known as the most-favored-nation clause, article XIII provides that consuls shall enjoy, the same immunities which the receiving country (e.g., here, the United States) extends to similarly ranked consul officers of third countries. On the basis of this clause the Austrian Ambassador makes reference to article 13 of the United States-Poland Consular Convention of 1972 (24 US Treaties & Other Int. Agreements, 1973, p 1243) and article 16 of the United States-Bulgaria Consular Convention of 1974 and requests that these provisions be extended to all Austrian consuls in the United States. Both of those conventions provide for complete immunity for consular officers and members of their families but only partial immunity for consular employees. The partial immunity conferred in civil matters is with respect to any acts performed within the scope of their official duties or official capacity, with certain exceptions not here pertinent.
*338 The Secretary of State’s response, in a note dated September 25, 1975, does not grant immunity to the defendant. Rather, it conditions a possible subsequent grant of immunity upon the Austrian government acknowledging "that the previously cited provisions of the United States-Poland and United States-Bulgaria Consular Conventions will be made applicable to the United States consular personnel in Austria” and "that United States consular personnel serving in Austria will receive the same immunities requested for Austrian consular officers in the United States”.
The Austrian Ambassador then submitted an aide memoir to the Secretary of State on October 14, 1975 in response to the Secretary’s note. The aide memoir does not acknowledge that United States consular personnel serving in Austria would receive the same immunities the Ambassador has requested for Austrian consular officers in the United States or that Austria would be bound by the above-cited conventions. Instead, the memoir objects to the principle of reciprocity being imposed by the State Department as a condition to extending immunity to the defendant and requests that the department re-examine its position.
The court has received no further communications from the Austrian Government with regard to the State Department’s request for an acknowledgment of reciprocity although, as discussed below, the plaintiff has submitted a subsequently obtained letter from the Office of the Federal Ministry of Justice of Austria.
It is clear that, based upon the above notes, the State Department has not extended immunity to the defendant in this case. Instead, it can either be concluded that the request for immunity has been denied or, looking at it in the most favorable light to the defendant, that the State Department has not taken a position in the absence of the Austrian Government’s acknowledgment of reciprocity. The court will consider both alternatives as it now discusses the applicable law.
It is well established that a State Department’s suggestion that a foreign sovereign be granted immunity is conclusive upon the court (Mexico v Hoffman, 324 US 30, 35; Isbrandtsen Tankers, v President of India, 446 F2d 1198, 1201, cert den 404 US 985; Matter of United States of Mexico v Schmuck, 294 NY 265, 273). It is equally well settled that a State Department’s suggestion denying immunity is also conclusive *339 upon the court (Mexico v Hoffman, supra; Victory Transp. v Comisaria General de Abastecimientos y Transportes, 336 F2d 354, 358, cert den 381 US 934; Renchard v Humphreys & Harding, 381 F Supp 382, 384; French v Banco Nacional de Cuba, 23 NY2d 46, 51).
Thus, if the court would construe the State Department’s note to the Austrian Ambassador as denying the defendant immunity, this determination would be binding on the court. However, in the absence of specific language denying immunity the court would be reluctant to adopt this posture. Here the Secretary of State in his note did not deny or suggest that immunity be denied the defendant. Consequently, the court prefers to adopt the alternative approach that the State Department is taking no position in the matter. In such a case, then, the court is free to determine for itself the question of immunity (Arcaya v Paez, 145 F Supp 464, 470, affd 244 F2d 958; Aerotrade v Republic of Haiti, 376 F Supp 1281, 1282).
It is the generally accepted rule in the United States that a consul is not immune from civil suits except as to acts performed within the scope of his official duties (Arcaya v Paez, supra; Anderson v Villela, 210 F Supp 791, 792). This rule is buttressed by the 1963 Vienna Convention on Consular Relations (21 US Treaties & other Int. Agreements, 1970, If 77, 104), with both the United States and Austria as signatories, which provides in article 43 that: "Immunity from jurisdiction 1. Consular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving State in respect of acts performed in the exercise of consular functions.”
If the court were to apply the above rule and consular convention to the facts herein, a finding that the defendant is not entitled to diplomatic immunity would be warranted as the defendant’s marital situation would be personal to him and obviously not within the sphere of his official duties. However, the defendant argues that this limited concept of consular immunity has been abrogated by treaty, referring specifically to the most-favored-nation clause of the previously cited 1928 Treaty between the United States and Austria and to the United States-Poland and United States-Bulgaria Consular Conventions.
The court finds this argument to be without merit. First, the most-favored-nation clause does not embrace, unconditionally, *340 the specific rights and privileges which are granted on the basis of reciprocity to the consular officers of third countries; the country whose consular officers assert such rights and privileges must, in fact, accord the same rights and privileges to American consular officers in their territories. The United States State Department has interpreted the most-favored-nation clause of consular treaties as containing such a qualification of reciprocity even though not expressly included in the treaty (47 Iowa L Rev 672). This interpretation is in accord with the State Department’s position in this case as regards the most-favored-nation clause of the United States-Austria Treaty. Thus, until the Austrian government acknowledges reciprocity; this most-favored-nation clause is not to be given effect here so as to confer the immunity requested by the defendant.
Secondly, a letter dated October 21, 1975 from the Federal Minister of Justice of Austria sent to the plaintiff in response to her request and submitted by the plaintiff to the court states categorically (in the English translation) with respect to the afore-mentioned most-favored-nation clause: "But in the Republic of Austria, consular employees of third nations have no immunity from Austrian jurisdiction in divorce cases.” While the court does not accept this letter as representing the official position of the Austrian Government in response to our State Department’s request for acknowledgment of Austrian reciprocity, the quoted statement is a strong indication that reciprocity does not yet exist on the part of the Austrian Government so as to extend immunity to the defendant on the basis of the most-favored-nation clause and the United States-Poland and United States-Bulgaria Consular Conventions.
Finally, even if the court were to find, which it does not, that reciprocity is not a precondition to the applicability of these treaties, the defendant has not sustained the burden of proving that he is entitled to immunity thereunder. Immunity would be extended to him only if he were to be a "consular officer” as distinguished from "consular employee”. The defendant has not demonstrated to the satisfaction of this court which category he falls under.
The court must therefore conclude that the defendant is not entitled to diplomatic immunity in this case, and accordingly defendant’s motion to dismiss on that ground is denied.
In support of its second ground for dismissal of the action, viz., the court lacks jurisdiction of the subject matter, the *341 defendant contends that the residence requirements for the maintenance of a divorce action in this State have not been met. As the court’s jurisdiction in matrimonial actions is wholly statutory and is limited to that which is expressly conferred by statute, the failure to meet the statutory residence requirements for the bringing of this suit would deprive the court of jurisdiction of the subject matter of the action (Eckert v Eckert, 34 AD2d 684). Section 230 of the Domestic Relations Law, the governing statute in this regard (Eckert v Eckert, id.), contains five alternative residency requirements, the following three of which are claimed to be applicable in this case:
"2. The parties have resided in this state as husband and wife and either party is a resident thereof when the action is commenced and has been a resident for a continuous period of one year immediately preceding, or
"3. The cause occurred in the state and either party has been a resident for a continuous period of at least one year immediately preceding the commencement of the action, or
"4. The cause occurred in the state and both parties are residents thereof at the time of the commencement of the action”.
"Residence” for the purpose of any of these provisions of section 230 has been held to be "synonymous with the term 'domicile’, so that the requirement of residence is not satisfied by the mere bodily presence of the parties within the State, no matter for how long a period” (Usher v Usher, 41 AD2d 368, 370). Residence means living in ° a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home (Matter of Newcomb, 192 NY 238, 250; Pignatelli v Pignatelli, 169 Misc 534, 537).
The plaintiff, though, argues that domicile is not necessary in view of section 231 of the Domestic Relations Law, which provides: "If a married woman dwells within the state when she commences an action against her husband for divorce, annulment or separation, she is deemed a resident thereof, although her husband resides elsewhere.” The several cases cited by the plaintiff which have construed this section hold that while residence as used in section 230 of the Domestic Relations Law means domicile or permanent abode, a plaintiff wife may maintain a divorce or separation action even though she may not be domiciled in this State, if it affirmatively appears that she was actually dwelling here at the time the *342 action was commenced. (Boessenkool v Boessenkool, 42 Misc 2d 945, 946, affd 21 AD2d 855; Taubenfeld v Taubenfeld, 276 App Div 873, rearg and app den 276 App Div 918; Brown v Brown, 55 Misc 2d 174, 176.)
These cases do not, however, suggest that the use of section 231 of the Domestic Relations Law completely obviates the need to satisfy the jurisdiction requirements of section 230 of the Domestic Relations Law. In both Boessenkool and Brown, the court stated the applicable section 230 requirement, which in each case (under the statute then in existence prior to the current provisions) required only that a party to a marriage consummated in this State be a resident hereof when the action is commenced. To meet the residency requirement at commencement of the action, the court resorted to section 231 (Boessenkool v Boessenkool, supra; Brown v Brown, supra).
This court finds that section 231 does not, by itself, confer jurisdiction upon the court unless the plaintiff also meets the additional jurisdictional requirements under section 230 of the Domestic Relations Law (11 Zett-Edmonds-Schwartz, NY Civ Prac, § 3.10, subd [2]). For this purpose, the word "resident” shall have the meaning previously ascribed to it, i.e., domicile.
Does the plaintiff or the defendant satisfy the resident-domicile requirements of subdivisions 2, 3 or 4 of section 230?
As regards the defendant, it is "well settled that consular officers who confine themselves to their official work do not acquire a new domicile in the country to which they are deputed but remain domiciled as before, unless a change of domicile by choice is otherwise established.” (Urdaneta v Urdaneta, 36 NYS2d 330, 331.) The defendant claims that he is now here solely in his official capacity, and that his domicile remains in Austria. The plaintiff has presented no proof to otherwise controvert this claim. Since there is not one scintilla of evidence to support a finding that the defendant changed his domicile to New York during his residence as a visiting professor, the facts can admit of but one inference (Rubin v Irving Trust Co., 305 NY 288, 306). Consequently, as a matter of law, the court concludes that the defendant was not a resident of New York when this action was commenced and was not a resident for a continuous period of one year immediately preceding.
In view thereof, subdivision 4 of section 230 of the Domestic Relations Law cannot be the basis of jurisdiction in this action *343 since it requires the residence of both parties at the time of the commencement of the suit. Subdivision 3 requires, inter alia, that the cause must have occurred in this State. Since it is undisputed that the plaintiffs grounds for divorce, viz., cruel and inhuman treatment and desertion, arose, if at all, while she and the defendant were living in New York, this court will not need to consider the applicability of subdivision 2.
The one remaining element necessary to sustain jurisdiction under subdivision 3 is whether the plaintiff wife has been a resident of New York for the required one-year period immediately preceding the commencement of this action. Can this court conclude as a matter of law that the plaintiff has or has not met this residency requirement, viz., that she has been domiciled here continuously from July 14, 1974 until she commenced the action on July 14, 1975?
The defendant asserts that the plaintiff is not domiciled in New York because of her nonimmigrant alien student status, which is defined as an "alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study” (US Code, tit 8, § 1101, subd [a], par [15], cl[F], sub cl [i]).
The mere fact that a person enters the United States on a non immigrant visa does not establish as a matter of law that she may not acquire a domicile in this country (Jacoubovitch v Jacoubovitch, 279 App Div 1027, app den 279 App Div 1078; Taubenfeld v Taubenfeld, 276 App Div 873, rearg and app den 276 App Div 918, supra). The alien’s intention to remain permanently in the United States does not make it unlawful for her to have entered the United States as a non immigrant (Brownell v Gutnayer, 212 F2d 462, 464; see excellent discussion in Williams v Williams, 328 F Supp 1380, 1384), and her arrival under a temporary visa is not enough to prevent the alien from becoming a resident of this State for purposes of maintaining an action for divorce (Townsend v Townsend, 176 Misc 19, 20). It is clear that an alien can retain her foreign nationality and citizenship and still establish a domicile in New York in the same way as a United States citizen can (De Pena v De Pena, 31 AD2d 415, 417; Matter of Appleby, 106 NYS2d 294, 300, affd 279 App Div 993). The alien status can, however, operate as an evidentiary fact against the person’s *344 alleged intention to remain in the State permanently (51 ALR 3d 223, 229).
Consequently, the plaintiff, contrary to the defendant’s assertion, would not be precluded from becoming a domiciliary of New York because of her nonimmigrant alien status. Whether she has in fact done so must be examined along with whether she has been a domiciliary for the requisite one-year period prior to commencement of the action.
As to the latter point, the plaintiff contends that her residency began in September, 1973, when she and her husband first came to this country on his Fulbright professorship, and continued up to the commencement of the action. The defendant, on the other hand, claims that the one-year requirement has not been met asserting that plaintiff’s residency should be counted from January 24, 1975, the day she returned to the United States on her student visa.
This court finds that neither position is tenable, and that the answer requires a consideration of some of the following principles of law governing the subject of domicile.
When people marry, they acquire a matrimonial domicile (11 Zett-Edmonds-Schwartz, NY Civ Prac § 3.07, subd [5]). This domicile is the place where the parties live together as husband and wife with the intention of making it their fixed and permanent home (Ruderman v Ruderman, 193 Misc 85, 87, affd 275 App Div 834). The husband has the right to select the matrimonial domicile (Heller v Heller, 172 Misc 875, affd 259 App Div 852, affd 285 NY 572) and this domicile, by operation of law, then becomes prima facie the legal domicile of the wife (Hunt v Hunt, 72 NY 217, 242; Matter of Daggett, 255 NY 243, 246). She is not free to change this domicile or adopt one of her own for as long as their marriage remains amicable (Matter of Daggett, id.). But at such time as the husband has destroyed the unity of the marital res by his wrongful conduct, the wife may establish her own domicile even in another jurisdiction than that of her husband (Hunt v Hunt, supra; Matter of Smidt, 162 Misc 596, 599). Thus, where the husband has abandoned his wife, or has committed such acts toward her as would justify her refusal to continue to live with him, she may acquire a separate domicile (Vanderbilt v Vanderbilt, 1 NY2d 342, affd 354 US 416; Matter of Smidt, supra) for all purposes, including divorce (Castellani v Castellani, 176 Misc 763, opn in 28 NYS2d 879, 899; Kaufman v Kaufman, 160 NYS 19, 23, affd 177 App Div 162).
*345 Until such time as the wife acquires her own domicile, the existing matrimonial domicile would continue (Ruderman v Ruderman, 193 Misc 85, 87, affd 275 App Div 834, supra; Pignatelli v Pignatelli, 169 Misc 534, 537, supra). To effectuate a change of domicile, there must be an actual change of residence (in the usual case) along with absolute and fixed intention of abandoning the former domicile and acquiring a new one (Ruderman v Ruderman, supra). Thus, before a new domicile can be acquired, there must be a union of residence and intention (Clapp v Clapp, 272 App Div 378, 380). However, a new domicile may be obtained even if the person has not determined in what house she will permanently dwell (Matter of Eisenberg, 177 Misc 655).
"Whether there has been a change of domicile depends entirely upon the facts and circumstances of a particular case. The determining factor is the element of intention, and not the length of residence. Intention is a question of fact rather than of law. Once a domicile has been established * * * the burden of proving a change is upon the party who asserts it. Moreover, the evidence to establish it must be clear and convincing” (Ruderman v Ruderman, 193 Misc 85, 87, affd 275 App Div 834, supra).
Once a new domicile is established, it is not lost by temporary absences, provided there is a corresponding intention to retain the residence as a domicile (Rawstorne v Maguire, 265 NY 204, 209; Clapp v Clapp, 272 App Div 378, 380, supra).
Applying these general principles to the facts herein, the parties’ matrimonial domicile, prior .to their entry into the United States in 1973, was in another country, presumably Austria in accordance with the defendant’s statement that he is a domiciliary of Austria. And since fhis court has previously concluded that the defendant never changed his domicile to New York while here as a visiting professor, the plaintiff whose domicile followed that of her husband’s could not have become a "resident” in September, 1973. It was not until such time as the defendant’s wrongful conduct (i.e., his mistreatment or abandonment of her) justified her in so doing, that she could have established her own domicile in New York. When this occurred, and whether or not there was the requisite fact and intent by plaintiff to acquire a domicile on or prior to July 14, 1974, cannot be determined from the papers submitted herein.
If the plaintiff did establish such a residence in New York, *346 her return to Austria on December 18, 1974 for the temporary and limited purpose of obtaining her children would not interrupt the new domicile so acquired, providing her intention was not to abandon such domicile. Her subsequent reentry into the United States on January 24, 1975 as a student having nonimmigrant alien status would only operate as a factor to be considered in determining her true intentions to become or remain a domiciliary and would not establish this as the earliest date on which she could have acquired a residence here, as urged by the defendant.
Thus, this court cannot conclude as a matter of law that the plaintiff has not met the one-year continuous residency requirement of subdivision 3 of section 230 of the Domestic Relations Law. Rather, the court finds the plaintiff’s domiciliary ’status in New York, and when it was acquired, to be questions of fact which should not be decided on the basis of affidavits. (Taubenfeld v Taubenfeld, 276 App Div 873, rearg and app den 276 App Div 918, supra.)
This jurisdictional question should, however, be disposed of by the court expeditiously at the threshold of the litigation (Usher v Usher, 41 AD2d 368, 370, supra) and accordingly, the court will resort to the procedure set forth in CPLR 3211 (subd [c]), which provides that "The court may, when appropriate for the expeditious disposition of the controversy, order immediate trial of the issues raised on the motion.” The issue presented here is well suited to resolution by this procedure, since, if the plaintiff is found not to have established a domicile in New York on or prior to July 14, 1974, the need for a plenary trial will have been obviated, and even if the question is decided in favor of the plaintiff, a substantial saving of time will result on the plenary trial (Usher v Usher, supra).
At the hearing determining the jurisdictional issue, the plaintiff will have the burden of proving that she changed her "residence” from that of her matrimonial domicile to New York. By "clear and convincing” evidence, the plaintiff will have to prove that the following occurred on or prior to July 14, 1974 in order to sustain the maintenance of this action:
(1) the fact of defendant’s misconduct, sufficient to justify her in acquiring her own domicile;
(2) plaintiff’s intention to abandon the matrimonial domicile;
(3) plaintiff’s intention to change her domicile; and
*347 (4) the union of fact and intention that New York has become her new domicile.
In addition, the plaintiffs return to Austria to obtain her children and her subsequent re-entry into the United States on a student visa will have to be taken into account in determining her domiciliary intentions.
Accordingly, a decision regarding the defendant’s motion to dismiss on the ground that the court does not have jurisdiction of the subject matter of this action is held in abeyance pending a hearing on this issue to be held in Special Term Part V of this court on January 12, 1976 at 11:00 a.m.