Rosa BUSTAMANTE, Plaintiff
and Appellant,

v.

Rogelio BUSTAMANTE, Defendant
and Respondent.

No. 17305.

Supreme Court of Utah.

March 11, 1982.

Jackson Howard, Richard B. Johnson, Provo, for plaintiff and appellant.

Jerry Reynolds, Dallas Young, Jr., Provo, for defendant and respondent.

STEWART, Justice:

Plaintiff, Rosa Bustamante, a nonimmigrant alien, brought this divorce action which was dismissed on the ground that the plaintiff was not a resident of the State of Utah as required by Utah Code Ann., 1953, § 30–3–1. On appeal we must decide whether an alien, present in this jurisdiction under a temporary nonimmigrant visa, is precluded as a matter of law from fulfill-

ing the residency requirements of our divorce statute, § 30–3–1.

Plaintiff married defendant in 1947 in El Salvador, the country of their citizenship. The plaintiff arrived in Utah August 19, 1979, on a visitor's visa valid through July, 1980. On June 21, 1980 she submitted an application to federal authorities to extend her stay until December 31, 1980. Because Mrs. Bustamante neither speaks nor writes English, her son prepared the extension application which stated that plaintiff desired to spend Christmas with her family and that the political situation in El Salvador was too unstable to assure her safety upon return. She received the requested extension. On January 13, 1981, plaintiff applied to the Immigration and Naturalization Service for a change in her status to that of political asylum.

On July 14, 1980 plaintiff filed this action in the trial court, and the defendant moved to dismiss for lack of subject matter jurisdiction. A hearing on the issue was held July 25, 1980, and evidence as to the jurisdiction was adduced. Plaintiff presented the following testimony: She came to the United States intending to live in Utah for the rest of her life. She and her husband had been estranged for several years. He abandoned her, refused to account for his whereabouts for long periods of time, and established a marital relationship with another woman in Tennessee. She came to the United States on a visitor's visa because it was the easiest manner of entry available to her. Her move to the United States intentionally coincided with her daughter's pending application for citizenship and ability to sponsor her as an immigrant. The daughter lives in Utah, is 29 years old, married to an American, and has four children. Plaintiff also has a son and minor daughter living in Utah. She owns real property in both Provo and Cedar City and has bank accounts in Utah County.

After hearing plaintiff's testimony regarding her intention in coming to this country and in remaining for the necessary three months for filing her divorce complaint, the court found that "the best and most believable evidence as to the intent of plaintiff to make Utah County her permanent residence is found in her application to extend time of temporary stay which was executed by plaintiff on June 21, 1980." The court held that since she did not "seek to change her tourist status" to permanent residency, but merely to extend her stay until December 31, 1980, the application showed that as of June 21, 1980 she intended to remain temporarily and not permanently in Utah. On this and other evidence, the trial court concluded that plaintiff had not met the three month actual and bona fide residency on July 14, 1980, the date she filed her divorce action.

Section 30–3–1 confers jurisdiction on the district court to dissolve a marriage when plaintiff or defendant is an "actual and bona fide resident" of this state and of the county where the action is brought for three months immediately preceding the commencement of the action. The term "bona fide" resident connotes a good faith intention to reside in a particular place, a "home feeling" for that place, see *Munsee v. Munsee*, 12 Utah 2d 83, 85, 363 P.2d 71, 72 (1961), and the absence of an intention to live elsewhere permanently, see *Gardner v. Gardner*, 118 Utah 496, 222 P.2d 1055 (1950). "Actual" residence requires physical presence. 12 Utah 2d at 85, 363 P.2d at 71. To establish an actual and bona fide residence, ". . . one must have some abode in the county to which he intends to return and where, in doing so, he would be no trespasser." *Id.* Factors that may reflect the requisite intent to return or remain in a jurisdiction include voting, owning property, paying taxes, having family in the area, maintaining a mailing address, being born or raised in the area, working or operating a business, and having children attend school in the forum.

Defendant argues that an intent to remain permanently in the United States is in direct conflict with plaintiff's visitor's status and that an intent to establish permanent residency in the United States would be inconsistent with the requirements which must be met to obtain a temporary

visa. Entry under those circumstances would be fraudulent, so the argument goes, and one who so enters under those circumstances would preclude one from becoming a bona fide domiciliary as a matter of law. Plaintiff concedes that one who resides in the country without permanent status may as a factual matter lack the intent to remain but is not precluded as a matter of law from establishing that intent. As a general proposition that is a correct statement of the law.

We emphasize that a visa application or renewal form indicating a date certain for return to one's home country is not necessarily inconsistent with an actual conditional intent to establish permanent residency in the United States, if possible, by means of renewals and extensions of one's nonimmigrant status or attainment of immigrant status. Indeed, plaintiff's visa extension until December 31, 1980 is just one example of a legal means to fulfill her intention to stay beyond an expressed return date. Moreover, it is instructive to note that nonimmigrant aliens need no longer leave the country to apply for an immigrant visa. In 1952 Congress created an "adjustment of status" mechanism by which an alien already in the United States may apply for permanent resident status. Immigration and Naturalization Act of 1952, Ch. 477, § 245, 66 Stat. 217 (1952) (current version at 8 U.S.C., § 1255 (1976).

Even if the plaintiff's professed intention to establish an actual and bona fide residency is inconsistent with the terms of her right of entry into the United States, she is not thereby disqualified from becoming a domiciliary for divorce purposes. As stated in *Williams v. Williams*, 328 F.Supp. 1380, 1383 (D.C.V.I., 1971):

> Even assuming the least favorable situation, where an alien has misrepresented his true intent at the time he was granted entry to the country, the fact that he may be illegally in the country and deportable would not preclude him from forming an actual intent to make his home here. I see no reason to erect from the immigration laws an insuperable barrier of "constructive" intent in divorce litigation that cannot be overcome even by proof of a person's actual intent. The enforcement of immigration laws properly remains with those to whom it is entrusted by law and does not need in aid of enforcement the judicially created civil disability of exclusion from our divorce courts. There is no rational ground for intermingling these two distinct areas of law—immigration and divorce.

"A visa is a document of entry required of aliens by the United States Government and is a matter under the control of the government. It has little relevance to the question of domicile." *Alves v. Alves*, 262 A.2d 111, 115 (D.C.App.1970). A state must determine who qualifies as a resident under its own laws, and need not assist the Federal Government in enforcing the immigration and naturalization laws. Numerous cases have held that nonimmigrating aliens may form the requisite intent to establish a permanent residence necessary for divorce jurisdiction. *Torlonia v. Torlonia*, 108 Conn. 292, 142 A. 843 (1928); *Abou-issa v. Abou-issa*, 229 Ga. 77, 189 S.E.2d 443 (1971); *Gosschalk v. Gosschalk*, 48 N.J.Super. 566, 138 A.2d 774 (1958); *Cocron v. Cocron*, 375 N.Y.S.2d 797, 84 Misc.2d 335 (1975). See also *Brownell v. Gutnayer*, 212 F.2d 462 (D.C.App.1954). Given the uncertainty confronting an alien in knowing whether he may be accorded the right to remain indefinitely or permanently under certain situations, we hold that an alien may have a "dual intent"—an intent to remain if that may be accomplished and at the same time an intent to leave if the law so commands.

In equity cases our scope of review is broad, and this Court may weigh the evidence and determine the facts. *Ovard v. Cannon*, Utah, 600 P.2d 1246 (1979). Generally, we defer to the findings of fact of the trial judge unless the findings are based on an erroneous standard, although this Court may under some circumstances reassess the facts itself. Under similar facts, numerous courts have treated the issue of residency as a matter of law and simply reversed a trial court's ruling. E.g., *State Farm Mutual*

*Automobile Insurance Co. v. Borg*, 396 F.2d 740 (8th Cir. 1968); *Peninsula Insurance Co. v. Knight*, 254 Md. 461, 255 A.2d 55 (1969); *Buddin v. Nationwide Mutual Insurance Co.*, 250 S.C. 352, 157 S.E.2d 633 (1967); *Pamperin v. Milwaukee Mutual Insurance Co.*, 55 Wis.2d 27, 197 N.W.2d 783 (1972).

■ Generally, however, the determination of residency for divorce purposes is a mixed question of law and fact. *Williams v. Williams*, 226 Ga. 734, 177 S.E.2d 481 (1970). *Cf. Munsee v. Munsee*, 12 Utah 2d 83, 383 P.2d 71 (1961). Of course, when credibility is an issue a trial judge is in an advantaged position in evaluating the evidence. *Searle v. Searle*, Utah, 522 P.2d 697 (1974); *Cox v. Cox*, Utah, 532 P.2d 994 (1975).

■ This Court has not heretofore addressed the issue of the definition of "residency" under Utah law as it relates to aliens who are in this country on a nonpermanent type visa. How the trial court might have ruled on the basis of the standards set forth herein, we cannot predict. Furthermore, there may be issues of credibility which must yet be resolved. Therefore, the most appropriate procedure in our view is to remand this case to the trial court to determine again whether on the facts and the law, including the law set forth in this opinion, a different conclusion as to residency should be made. On that, we express no opinion.

Reversed and remanded. No costs.

OAKS and HOWE, JJ., concur.

HALL, Chief Justice (dissenting):

I do not join the majority because it pursues a nonissue in reaching its conclusion that the case should be remanded for a second determination of the residency issue.

The trial judge did not determine the issue of residency as a matter of law. Rather, being fully advised in the law, he treated the issue as factual in nature.[1] His denial of jurisdiction to plaintiff came only after the taking of evidence, followed by a

finding of fact that she did not intend to remain indefinitely in this country and therefore was not a Utah resident as required by U.C.A., 1953, 30–3–1. The evidence presented does not warrant any interference with that finding by this Court.

The standard for review of factual findings in equity cases has been stated recently by this Court:

... [D]ue to the prerogatives and advantaged position of the trial judge, we indulge considerable deference to his findings. Where the evidence is in dispute, we assume that he believed that which is favorable to his findings, and we do not disturb them unless it clearly preponderates to the contrary. [Citations omitted.]

*Tanner v. Baadsgaard*, Utah, 612 P.2d 345, 346 (1980). Thus, it is incumbent upon this Court to accept the trial court's factual finding as to her intent unless the evidence clearly preponderates against that finding.

In order to meet the bona fide residency requirement of Section 30–3–1, plaintiff had the burden of proving to the trial court that during the three months preceding the filing of her complaint she had intended to remain indefinitely in Utah. Plaintiff offered nothing more than her own testimony to show such an intention on her part. She testified that she had come to Utah with the purpose of establishing her home here and that her husband had promised at that time to buy her a house in Utah. She acknowledged, however, that she held only a tourist visa and that she had obtained other such visas on previous occasions for the purpose of traveling outside El Salvador.

In contrast, defendant, her husband, testified that plaintiff had come to this country with the purpose of supervising their 16-year-old daughter while she finished her schooling in the United States. He repeatedly denied ever having promised to buy his wife a house in Utah, and he testified that she had never expressed to him any intention of remaining here permanently:

1. The majority correctly reaches the same con-  clusion after its canvass of the cases.

Q: When did you learn that it was your wife's intention to stay here in the United States?

A: Well, the first time that I heard that was in court. . . .

In addition to his own testimony, defendant offered as evidence a copy of the plaintiff's application for extension of her visa, executed one month prior to the date of her complaint. The application states as plaintiff's reason for initially coming to the United States "to visit family" and as her reasons for requesting the extension: "I would like to stay and spend Christmas with my family. Right now the political situation of the country is too unstable." Under the heading "present nonimmigrant classification" is written the word "turist [sic]." The form also contains the statement, "I intend to depart from the United States on 12–31–80." Defendant offered as further evidence copies of plaintiff's passport and visa, which classify her as a tourist and nonimmigrant.

Plaintiff testified that she had no home to return to in El Salvador. This appears to contradict the allegation in her complaint that property accumulated by the parties during their marriage included "a farm and house in San Salvador, El Salvador, Central America, with an approximate value of $700,000.00." Defendant testified that he and his wife do not hold title to any home in El Salvador, but he explained that the home in which the family had lived for 25 years is still owned by one of his sons and occupied by another son. He stated that even while his wife had been living in that home, ownership had been held jointly by himself and two of the children. From this testimony, it appears that plaintiff lost no legal interest in the home when she came to the United States, having previously held none, and that she still has family ties to the home as before.

Plaintiff attempts to strengthen her claim of residency by alleging that she owns property in Utah, maintains local bank accounts and uses a Provo mailing address. Plaintiff fails to cite any support in the record for these allegations. Regarding the ownership of property in Utah, she testified at trial, "I don't have any property here. My husband does." Even if the trial court had found the above allegations to be true, it still could not have concluded that plaintiff was a bona fide resident unless it was also convinced of her intention to remain in Utah.

Faced with conflicting evidence as to plaintiff's intention concerning residency, the trial court had the duty to evaluate the credibility of the witnesses' testimony and of the statements contained in defendant's exhibits. The court determined that the most reliable evidence consisted of the statements in plaintiff's application for visa extension, that she planned to return to El Salvador. Accordingly, it found that plaintiff did not possess the necessary intent to be classified as a bona fide resident. The court had before it sufficient evidence on which to base this finding, and there is no reason for this Court to substitute its own assessment of the evidence for that of the trial court. Plaintiff's testimony, which constitutes the only evidence in her favor, clearly does not preponderate against the result reached by that court.

Accordingly, the trial court's order of dismissal based on lack of jurisdiction should be affirmed.

DURHAM, J., does not participate herein.