## STURDAVANT v. STURDAVANT.—189 S. W. (2d) 410.

Middle Section.   November 4, 1944.

Petition for Certiorari denied by Supreme Court, May 5, 1945.

274

Warden & Warden, of Manchester, for appellant.

Stewart, Chattin & Templeton, of Winchester, and Harry A. Silverstein, of Chicago, Ill., for appellee.

HOWELL, J. The original bill in this cause was filed in the Chancery Court of Coffee County, Tennessee, on July 21, 1943, and sought to set aside and vacate a decree granted to the defendant on pro confesso upon his application, giving him a divorce from the complainant on May 20, 1943, on the grounds of wilful desertion without reasonable cause for more than two full years, refusal by her to remove with him to Tennessee without reasonable cause and wilfully absenting herself from him for two years and upon the ground of cruel and inhuman treatment. The bill alleged that this decree for divorce had been fraudulently obtained and was therefore null and void. It was further alleged that at the time he filed the divorce bill, the defendant was not domiciled in the State of Tennessee, being merely stationed at Camp Forrest under orders of the United States Army, that it was untrue that she had refused to move to Tennessee with her husband, and that the charges of cruel and inhuman treatment were false.

The defendant herein filed a demurrer and also an answer in which he denied the material allegations of the bill.

The Chancellor overruled the demurrer and on final hearing entered a decree granting the relief prayed by

vacating and setting aside the divorce decree granted on May 20, 1943.

The defendant has perfected an appeal from the decree of the Chancellor and has assigned as error the action of the Chancellor in overruling the demurrer and in finding the appellant guilty of fraud in obtaining the divorce and granting her the decree herein and taxing the defendant with the costs.

The facts are that complainant and the defendant were married in Chicago on September 21, 1929, and lived there until he was mustered into the United States Army as a Major in the Spring of 1941 and assigned by the Military Authorities to Camp Forrest, near Tullahoma, Tennessee, where he was stationed at the time the bills in the two cases involved herein were filed. The parties have no children. When he left Chicago they stored their furniture and she went to live with her family. In July of 1941, the defendant went to Chicago on a leave of absence from Camp Forrest and stayed with the complainant at the home of her parents for about nine days. During this time they went over into Michigan to see his family and he then returned to Camp Forrest. In January, 1941, the complainant went to Tullahoma, Tennessee, the defendant met her at the train and he not having any place for her to stay, they went to a Motor Court on the road between Manchester and Tullahoma, where he occupied a cabin with her for four days and then they moved to the Hanely Tourist Home where they occupied a room together for about three days. They then went to Nashville and spent about one week together living in a room at the Sam Davis Hotel. The defendant then went to Florence, Alabama, on some official business, and complainant went back to Chicago. The complainant again came to Tennessee in August of 1942 and the defendant

met her at the train and took her to a tourist home at 428 East Lincoln Street, Tullahoma, Tennessee, where they occupied one room for about one month when she returned to Chicago. During her visits to the defendant in Tennessee, there was much conversation about money matters. The defendant had been sending complainant $60 per month for her living expenses and she wanted more. It was finally arranged that he send her $100 per month, which he did, the last payment of this amount having been made on June 8, 1943, after he had secured the divorce decree on May 20, 1943. On June 23, 1943, the defendant mailed to complainant a copy of the divorce decree. This was her first information that a bill for divorce had been filed against her.

██ It is true that the proceedings in the divorce case seem to be regular in every respect and the decree was granted upon a hearing on pro confesso. It is also true that the law in Tennessee at this time does not require any further effort to give a defendant actual notice of the filing of a bill for divorce than the ordinary publication. A pro confesso, however, does not admit or give the Court jurisdiction of the complainant.

██ It is well settled that a domicile once acquired is not lost until a new one is established. Under the facts of this case the question is whether or not the complainant was a resident of Tennessee so as to give the Chancery Court of Coffee County jurisdiction to grant a divorce. The defendant says that he intended to live in Middle Tennessee permanently. Before a new domicile can be acquired a home must be actually established with the intention to remain. No change of domicile can be effected by a mere statement of an intention not accompanied by some act in accord with this intention. There must be a concurrence of actual change of residence and

the intention to abandon the old and acquire a new domicile. See Sparks v. Sparks, 114 Tenn. 666, 88 S. W. 173. The mere intention to live at a place at some future time or upon the happening of some uncertain event is not sufficient. In this cause the defendant, a Major in the United States Army and a resident of Chicago, was sent to Camp Forrest. He testified that he had an intention of living in Middle Tennessee. We do not think these facts made him a resident of Coffee County, Tennessee, so as to give the Court of that County jurisdiction to entertain a divorce bill filed by him.

In 17 American Jurisprudence in paragraphs 249 and 250, on page 279 it is said:

"An 'actual bona fire resident', within the meaning of a statute, means a person who is in the state to reside there permanently and who, at least for the time being, entertains no idea of having or seeking a permanent home elsewhere. As a general rule, a statutory requirement of a bona fide residence is held to mean something more than an abode more or less permanent and to denote a 'residence' within the legal meaning of the word 'domicile;' that is, an abode animo manendi, a place where a person lives or has his home, to which, when absent, he intends to return and from which he has no present purpose to depart.

"As intimated in the section preceding, one of the essential elements which go to make up residence of a person as contemplated in the divorce laws is the intention on his part to live at the place of alleged residence permanently, or, as some of the cases put it, indefinitely. That a person has been bodily present in one place for the length of time required by the statutes is insufficient, if unaccompanied by the intention to live there permanently, to make that place his domicil. Abiding in one

place for a definite time, until the accomplishment of a certain purpose, unaccompanied by any intention to remain permanently or indefinitely, is not sufficient to give a person a statutory residence. While an intention so to reside is essential, it alone cannot retain a residence every vestige of which is gone, with no place left to which the party has the right to return. Therefore, intention by one removing with all his effects from a town, which is not his domicil of origin, to retain his residence there, is not sufficient to effect such result for the purpose of conferring jurisdiction of a divorce proceeding, if he does not have in that place property, home, or place to which he has a right to return. It is not enough to establish one's character as an actual bona fide resident of the state, within the meaning of the statute conditioning the right to sue for divorce upon one of the parties being domiciled in, and having been for at least one year preceding an 'actual bona fide resident' of the state, that during an absence from the state of long duration, he has had no intention, of establishing a permanent residence elsewhere, but has entertained an intention ultimately to return to, and physically reside in, the state and has in fact returned to the state. On the other hand it has been said that one may have a residence in a boarding-house as well as in a rented building or property owned outright and that the question is not how the party lived, but whether he has determined to make the place his home. The intention to take up a residence must be bona fide, not merely claimed, and is to be considered in connection wth the acts of the party.''

██ In Corpus Juris Secundum, vol. 28, Domicile, sec. 12, on page 28, it is said:

''The domicile of a soldier or sailor in the military or naval service of his country generally remains unchanged,

domicile being neither gained nor lost by being temporarily stationed in the line of duty at a particular place, even for a period of years, and even though he establishes his family where he is stationed. A new domicile may, however, be acquired if both the fact and the intent concur.

"When a person performs voluntary military service under a foreign sovereign, and service is a fact strongly contributing to establish a domicile where the service is rendered; but no domicile is acquired where the foreign service is involuntary."

In the case of Brown v. Hows, 163 Tenn. 178, on page 184, 42 S. W. (2d) 210, 212, Chief Justice Green said:

"Indeed we are of the opinion that a bare intent to make a particular place one's residence is not sufficient to establish a domicile. There must be some appropriate action harmonizing with the intent."

It is well settled that to effect a change of domicile there must be both the intention to do so and the actual taking of some steps to carry out that intention.

See Gipson v. Gipson, 151 Fla. 587, 10 So. (2d) 82; Trigg v. Trigg, 226 Mo. App. 284, 41 S. W. (2d) 583; Note, 129 A. L. R. 1382.

■ It is true that the defendant would not have been precluded from establishing a domicile in the State of Tennessee by reason of the fact that he was in the United States Army and at Camp Forrest under orders of the Military Authorities, if he had so desired. See Percy v. Percy, 188 Cal. 765, 207 P. 369; Hawkins v. Winstead, Idaho, 138 P. (2d) 972, and many other cases.

■ We find, however, that in this case there is nothing to indicate a change of domicile except the self serving declarations of the defendant that he had such intentions. These are not sufficient.

We hold therefore that when the defendant, as complainant in the original case, represented to the Court that he was a resident of Coffee County, Tennessee, he practised a constructive fraud upon the Court and the decree for divorce in that case is void. Rose v. Rose, 176 Tenn. 680, 145 S. W. (2d) 773; Wills v. Wills, 104 Tenn. 382, 58 S. W. 301.

We will not discuss the other questions raised by the assignments of error.

All assignments of error are overruled and the decree of the Chancery Court of Coffee County is affirmed at the cost of the appellant and the surety upon the appeal bond.

Affirmed.

Felts and Hickerson, JJ., concur.