IN THE COURT OF APPEALS OF TENNESSEE

FILED

June 6, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| AEYON CHO, | ) | C/A NO. 03A01-9608-CV-00268 |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | |
| | ) | INTERLOCUTORY APPEAL PURSUANT TO |
| v. | ) | RULE 9, T.R.A.P., FROM THE |
| | ) | KNOX COUNTY CIRCUIT COURT |
| | ) | |
| | ) | |
| | ) | |
| DAE-YOUNG JEONG, | ) | |
| | ) | HONORABLE BILL SWANN, |
| Defendant-Appellant. | ) | JUDGE |


For Appellant

JAMES M. CRAIN
Knoxville, Tennessee

For Appellee

JEAN MUNROE
Knoxville, Tennessee

LAURA RULE HENDRICKS
Eldridge, Irvine & Hendricks
Knoxville, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                                    Susano, J.

We granted the application of Dae-Young Jeong (Husband) for an interlocutory appeal pursuant to Rule 9, T.R.A.P., to consider whether the trial court has subject matter jurisdiction to grant his wife, the plaintiff Aeyon Cho (Wife), an absolute divorce.

On December 20, 1995, Wife filed a complaint seeking a divorce from Husband on the grounds of irreconcilable differences and inappropriate marital conduct. Wife's complaint was met by Husband's motion to dismiss, in which he asserted that the trial court "lack[ed] subject matter jurisdiction to award a divorce between these two non-domiciliaries of Tennessee." The trial court denied the motion and this appeal followed.

Husband raises a number of issues that can be encapsulated into three questions:

> 1. Does Wife's nonimmigrant status under U.S.C. § 1101(a)(15)(F) preclude her, as a matter of law, from establishing a domicile in Tennessee?
>
> 2. Does the evidence preponderate against the trial court's determination that Wife had the requisite intent to establish a domicile in Tennessee?
>
> 3. Did Wife enter this country and does she remain in this country based on false statements to the United States immigration authorities or the trial court so that equitable principles bar her divorce action?

I. *Facts*

2

The parties are citizens of the Republic of Korea. Their child, Min-gu Jeong, was born in Korea on October 6, 1994. He too is a citizen of Korea. Wife entered the United States as a nonimmigrant alien. At all relevant times, her alien status was defined either by subsection (i) or by (ii) of 8 U.S.C. § 1101(a)(15)(F):

> (i) An alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study at an established college, university, seminary, conservatory, academic high school, elementary school or other academic institution or in a language training program in the United States, particularly designated by him and approved by the Attorney General after consultation with the Secretary of Education, which institution or place of study shall have agreed to report to the Attorney General the termination of attendance of each nonimmigrant student and if such institution of learning or place of study fails to make reports promptly the approval shall be withdrawn, and (ii) the alien spouse and minor children of any such alien if accompanying him or following to join him.

Wife initially entered the United States pursuant to subsection (ii) of 8 U.S.C. § 1101 (a)(15)(F). At the same time, her husband entered this country pursuant to subsection (i). When Wife entered this country, she "was required to attest that she had a residence in the Republic of Korea, to which she intended to return when her husband's course of study was completed."[1]

---

[1]The bulk of the facts set forth in the first paragraph under the heading "Facts" were admitted by Wife when she failed to respond to Husband's request for admissions. *See* Rule 36, Tenn.R.Civ.P.

The statement of evidence filed pursuant to Rule 24(c), T.R.A.P. provides as follows:

Ms. Cho testified that she and [Mr. Jeong] were married on Christmas, 1993, and shortly thereafter came to the United States so that [her husband] could pursue his studies at the University of Tennessee. She stated that she had remained here all of her married life. She testified that all of her family were in "her country" (i.e., The Republic of Korea); that neither she nor [her husband] had a separate residence in the Republic of Korea, and that she had no property or belongings in the Republic of Korea. She testified that she desired to make Knoxville her home, that she has friends in Knoxville, that she was involved in a church (Greystone Presbyterian Church), that she had acquired a driver's license, a credit card, and a social security number, that she has leased an apartment under a six month lease, which was renewable at the end of that term, that she has applied for a "F-1" visa (i.e., for non-immigrant status as defined [in] 8 U.S.C. 1101(15)(F)(i)). . . . She testified that if she returned to Korea, [her husband's] parents would immediately obtain custody of her minor son. She testified that she had established a relationship with local doctors, . . . . She further testified that she had established a "relationship" with Child & Family Services, . . . She testified that she had a Master's degree, that her family was willing to support her while she was in the United States. She testified that she wished to remain in Tennessee for as long as necessary to obtain a divorce and maintain custody of her son during his minority.

Ms. Cho testified that she had come to the United States to be with her husband while he completed his education. She was asked why she changed [her] mind, . . . In response she stated that her husband mistreated her, that he consumed too much alcohol. She testified that she wanted him to change, and that he could change, but he would not. She was asked how she wanted him to change, and she stated that she wanted him to consume less alcohol. She was asked why she had any concerns about her husband having custody of her minor child, . . . In response, she related an event in which her husband had consumed considerable alcohol, and over her

4

objection took their minor child out for a drive around the parking lot. She stated that law enforcement officers had come to their apartment complex, one came to the door . . . . She then testified that the officer had told her that her husband was operating a vehicle under the influence, that he should not do so, particularly because of the danger to their minor child. Ms. Cho testified that she wanted to obtain a divorce from her husband and retain custody of her minor child, so that her child can get to know his mother. She said that she had no particular objection to a Korean divorce if she could be assured of seeing her minor child on a regular basis. She further testified that Korean law did not protect battered spouses.

On cross-examination, she testified that she had returned to Korea on two occasions during the two years between her initial arrival in this country and [the] filing of this suit, that upon one occasion she had attempted to obtain a divorce from her husband in Korea, but was unable to do so; that her driver's license was a restricted driver's license, requiring the presence of a licensed driver in the vehicle when she was operating same; that she had obtained a checking account at a local bank; and that her purpose of claiming domicile was so that she could obtain a divorce from her husband and custody of her child. She further testified that, in making application for an "F-1" student visa, she had filed a statement with the United States government that she had a home in Korea which she had no intention of abandoning, and that she wished to remain in the United States solely to pursue her education. When asked if she had lied when she made that statement, she responded in the affirmative.

[Ms. Cho] called Mark L. Knisely as a witness. He testified that he was the pastor of Greystone Presbyterian Church, that he knew [Ms. Cho], that she had been attending his church for some two years, and had been an active member for over one year. He was asked what she had told him concerning her intention to remain in the United States, . . . . Reverend Knisely then testified that Ms. Cho had told him that she wished to remain in the United States, that she had enrolled in a class to enhance her ability to understand the English language and that she had applied for admission to the University of Tennessee. On cross-examination he reaffirmed his testimony that Ms. Cho and her son had been

5

> regular participants at the church for a
> year, but testified that he did not know
> whether she and her son had returned to Korea
> at any time during that year.

The record reflects that, in addition to the facts established through Husband's request for admissions and the evidence set forth in the statement of evidence, the trial court also considered the affidavit[2] of Husband submitted in support of his motion to dismiss:

> My name is Dae-Young Jeong, and I am a
> citizen of the Republic of Korea. My wife,
> the Plaintiff Aeyon Cho, is similarly a
> citizen of the Republic of Korea. We were
> married in Komi, Korea on December 25, 1993.
>
> I am a student at the University of
> Tennessee, having been admitted to the United
> States under a student visa to allow me to
> pursue my education. My wife was admitted to
> the United States under a visa allowing her
> to accompany me as a member of my family. To
> the extent that my wife and I have resided in
> Tennessee, we have done so as temporary
> residents. We have not--and according to my
> understanding of the immigration laws of the
> United States of America, we could not--have
> become domiciled in Tennessee, because the
> basis upon which we were admitted to the
> United States precludes the establishment of
> a permanent residence here.
>
> My wife came to the United States on or about
> December 30, 1993. She returned to Korea
> less than four months later, on or about
> April 12, 1994, and remained in Korea until
> February 23, 1995. During her stay to [sic]
> Korea, our minor child, Min-gu Jeong, was
> born in the Republic of Korea. My wife
> returned to the United States on February 23,
> 1995, and remained here until October 3,
> 1995, when she again returned to the Republic
> of Korea. She returned to Tennessee on or
> about November 20, 1995, and left our
> apartment on or about November 25, 1995.

---

[2]Husband did not testify in person. Apparently, Wife did not object to Husband "testifying" by affidavit.

> Upon completion of my course of study at the University of Tennessee, I will be returning to the Republic of Korea. Indeed, under my present immigration status, I must do so. It is my understanding that upon the termination of my wife's status as a member of my family, she also must return to the Republic of Korea.

## II. *Trial Court's Decision*

The trial court concluded that "there is a sufficient *animus manendi*[3] for wife to have a Tennessee domicile as of the time of [the] hearing." The court relied "on wife's testimony as to her intent to retain custody of her baby, which she believes is most likely under the laws of this country."

Following its finding in favor of subject matter jurisdiction, the trial court granted Husband an interlocutory appeal pursuant to Rule 9, T.R.A.P. We granted the same relief by order entered September 18, 1996.

## III. *Standard of Review*

Husband filed what amounted to a motion for summary judgment, *see* Rule 12.03, Tenn.R.Civ.P.; however, the trial court elected to hold an evidentiary hearing on the issues raised by the motion. Because of this election, our review is *de novo* on the record. Rule 13(d), T.R.A.P. The record is accompanied by a

---

[3]The intention of remaining.

7

presumption of correctness, which we must honor unless the evidence preponderates against the court's findings. *Id.; **Union Carbide Corporation v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are not afforded the same deference. ***Adams v. Dean Roofing Co., Inc.***, 715 S.W.2d 341, 343 (Tenn.App. 1986).

We embark upon our analysis mindful that

> [a trial judge], on an issue which hinges on witness credibility, will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary.

***Tennessee Valley Kaolin Corp. v. Perry***, 526 S.W.2d 488, 490 (Tenn.App. 1974).

IV. *Law and Analysis*

The parties agree that the jurisdictional language of T.C.A. § 36-4-104(a)[4] -- "bona fide resident of this state" -- requires a showing that a given person is domiciled in this state. ***Brown v. Brown***, 150 Tenn. 89, 261 S.W. 959 (1924). The subject of

---

[4]T.C.A. § 36-4-104(a) provides as follows:

> A divorce may be granted for any of the aforementioned causes if the acts complained of were committed while the plaintiff was a bona fide resident of this state or if the acts complained of were committed out of this state and the plaintiff resided out of the state at the time, if the plaintiff or the defendant has resided in this state six (6) months next preceding the filing of the complaint.

8

domicile is discussed in the case of **Sturdavant v. Sturdavant**,
189 S.W.2d 410 (Tenn.App. 1944):

> Before a new domicile can be acquired a home
> must be actually established with the
> *intention to remain*. No change of domicile
> can be effected by a mere statement of an
> intention not accompanied by some act in
> accord with this intention. There must be a
> concurrence of actual change of residence and
> the intention to abandon the old and acquire
> a new domicile.

*Id*. at 411 (Emphasis added). *See also* **Sparks v. Sparks**, 114
Tenn. 666, 88 S.W. 173, 174 (1905).

"In determining whether or not a change of domicile has
been made, it is proper to consider, along with the statement of
the party of his intent in the matter, his conduct and
declarations and all other facts that throw light upon the
subject." *Id*. While an individual can have numerous places of
residence, he or she "can have but one domicile." **Brown**, 261
S.W. at 959.

A. *Nonimmigrant Status*

Husband argues that Wife's nonimmigrant status under 8
U.S.C. § 1101 (a)(15)(F) is an absolute impediment to her
formation of the requisite intent to "acquire a new domicile."
**Sparks**, 88 S.W. at 174. He points out that Wife acknowledged, by
failing to respond to his request for admissions, that she had
previously "attest[ed] [to the United States Government] that she
had a residence in the Republic of Korea, to which she intended

9

to return when her husband's course of study was completed." He also points out that, when she subsequently filed for nonimmigrant status under subsection (i) of the same code section in order to attend the University of Tennessee, she acknowledged that she had a "residence in a foreign country which [s]he [had] no intention of abandoning." *See* 8 U.S.C. § 1101 (a)(15)(F)(i).

We recently held that a party has the legal capacity to acquire a domicile in Tennessee even though he or she is a citizen of a foreign country. ***Anene v. Anene***, C/A No. 03A01-9511-CV-00387 (Tenn.App. at Knoxville, October 2, 1996). However, Husband correctly points out that in ***Anene,*** we did not consider the effect of 8 U.S.C. § 1101(a)(15)(F) on a nonimmigrant alien's attempt to establish a new domicile in this state. Husband contends that the instant case is a case of first impression in Tennessee, and we have found no authority to indicate otherwise.

While this issue does not appear to have been addressed by an appellate court in this state, it has been faced by a number of other jurisdictions. The clear weight of authority is to the effect that the nonimmigrant status of 8 U.S.C. § 1101(a)(15)(F) is not a *per se* absolute bar to the acquisition of a new domicile in this country, but only one factor to be considered along with a myriad of other relevant factors. *See, e.g.,* ***Alves v. Alves,*** 262 A.2d 111 (D.C.App. 1970); ***Bustamante v. Bustamante,*** 645 P.2d 40 (Utah 1982); ***Cocron v. Cocron***, 84 Misc.2d 335, 375 N.Y.S.2d 797 (N.Y.Sup.Ct., Spc.Term, 1975); ***In re Marriage of Dick***, 15 Cal.App.4th 144, 18 Cal.Rptr.2d 743 (Cal.2nd

10

Dist.Ct.App. 1993); *Perez v. Perez*, 164 So.2d 561

(Fla.Dist.Ct.App. 1964).


We find the reasoning of these cases persuasive.  In

the *Bustamante* case, the Supreme Court of Utah made pertinent

statements, which we adopt as a part of the rationale for our

holding in this case:


> Even if the plaintiff's professed intention
> to establish an actual and bona fide
> residency is inconsistent with the terms of
> her right of entry into the United States,
> she is not thereby disqualified from becoming
> a domiciliary for divorce purposes.
>
> *        *        *
>
> "A visa is a document of entry required of
> aliens by the United States Government and is
> a matter under the control of the government.
> It has little relevance to the question of
> domicile." *Alves v. Alves*, 262 A.2d 111, 115
> (D.C.App. 1970).  A state must determine who
> qualifies as a resident under its own laws,
> and need not assist the Federal Government in
> enforcing the immigration and naturalization
> laws.  Numerous cases have held that
> nonimmigrating aliens may form the requisite
> intent to establish a permanent residence
> necessary for divorce jurisdiction.
> (citations omitted).  Given the uncertainty
> confronting an alien in knowing whether he
> may be accorded the right to remain
> indefinitely or permanently under certain
> situations, we hold that an alien may have a
> "dual intent"--an intent to remain if that
> may be accomplished and at the same time an
> intent to leave if the law so commands.


645 P.2d at 42.  The same conclusion was reached in the case of

*In re Marriage of Dick* wherein the California Court of Appeals

stated the following:

11

> We conclude that husband's nonimmigrant status does not preclude a finding of residence under California law for purposes of obtaining a dissolution of marriage. We agree with **Bustamante** and **Cocron** that a nonimmigrant alien in the United States on a renewable visa may have the dual intention of remaining in this country indefinitely by whatever means including renewal of a visa and of returning to his or her home country if so compelled. At most, "alien status can . . . operate as an evidentiary fact against the person's alleged intention to remain in the state permanently [citation]." (**Cocron v. Cocron, supra**, 375 N.Y.S.2d at p. 809.)

> This conclusion is buttressed by the different aims and purposes of immigration and dissolution law; "[t]here is no rational ground for intermingling these two distinct areas of law . . . ." (**Williams v. Williams, supra**, 328 F.Supp. at p. 1383.) It is not necessary for the courts of this state to carry out immigration policy by denying nonimmigrant aliens a judicial forum when they otherwise meet domiciliary requirements and when they are subject to the courts of this state for other purposes. *(Ibid.* ["The enforcement of immigration laws properly remains with those to whom it is entrusted by law and does not need in aid of enforcement the judicially created civil disability of exclusion from our divorce courts."]; **Pirouzkar and Pirouzkar, supra**, 626 P.2d at p. 384 ["The enforcement of the immigration laws is the function of the federal government."].)

18 Cal.Rptr.2d at 747-48.


Despite the wealth of authority against his position, Husband nevertheless argues that the United States Supreme Court's decision in the case of **Elkins v. Moreno**, 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978) supports his contention. That case involved an attempt by nonimmigrant aliens residing in Maryland to obtain the benefits of "in-state" status at the University of Maryland, i.e., lower tuition and other benefits.

12

The plaintiffs in that case were dependents of parents who were in this country under a "G-4 visa"--a visa granted to "officers, or employees of . . . international organizations, and the members of their immediate families" pursuant to 8 U.S.C. § 1101 (a)(15)(G)(iv).

In *Elkins*, the Supreme Court held that federal law was not an impediment to an attempt by a nonimmigrant alien to establish a domicile in the United States in those cases where the alien *was not* required to maintain a residence in a foreign country. The Supreme Court expressly declined to consider whether a nonimmigrant alien who *was* required to maintain such a residence could nevertheless establish a domicile in this country. That issue was not before the court in *Elkins*. Because that issue was not addressed in *Elkins*, we agree with those courts that have held *Elkins* is not controlling precedent on the question of whether an 8 U.S.C. § 1101 (a)(15)(F) alien can acquire a domicile in this country for the purpose of obtaining a divorce. *See*, *e.g.*, *In re Marriage of Dick*, 18 Cal.Rptr.2d at 748. *Elkins* simply does not apply to the issue of domicile in a divorce case; for this reason, we do not find the reasoning in that case to be persuasive in the resolution of the instant case.[5]

---

[5]By way of a footnote, the court in *Elkins* recognized that a state has a significant interest in determining who can become a domicile:

> . . . the question of who can become a domiciliary of a State is one in which state governments have the highest interest. Many issues of state law may turn on the definition of domicile: for example, who may vote; who may hold public office; who may obtain a divorce; who must pay the full spectrum of state taxes. In short, the definition of domicile determines who is a full-fledged member of the polity of a State, subject to the full power of its laws

We hold that Wife's nonimmigrant status under 8 U.S.C.
§ 1101(a)(15)(F) is not an absolute bar to a finding of "bona
fide resident" status under T.C.A. § 36-4-104(a).  It is only one
of many facts that bear upon the question of whether a
nonimmigrant has the requisite intent to remain indefinitely in
this state.[6]

Husband's first issue is without merit.

---

   . . .

*Elkins*, 98 S.Ct. at 1347-48, n.16.

[6]As an evidentiary matter, a statement by an alien to the United States
Government in connection with that person's application for nonimmigrant
status is not conclusive.  *See* Rule 803(1.2), Tenn.R.Evid. ("Statements
admissible under this exception [to the hearsay rule] are not conclusive.")

B.  *Trial Court's Finding of Domicile*

Husband argues that even if the federal immigration laws are not an absolute bar to Wife's acquisition of a new domicile in Tennessee, nevertheless she failed to establish the dual requirements of residence and "intent[] to remain" in Tennessee indefinitely.

The trial court focused on Wife's professed intent to remain here until her child reached his majority--some 16 years in the future as of the date of the hearing below.  It found this to be a clear indication that Wife intended to remain indefinitely in Tennessee.  This is certainly a logical conclusion since it is clear that Wife believes she will encounter problems with respect to the custody of her child if she returns to Korea.  If one believes Wife, and the trial court obviously did, it cannot be seriously contended that Wife wants or intends to reside indefinitely in Korea; if not in Korea, then where does she intend to live?  We believe the question answers itself.

Husband argues that Wife intends to remain in Tennessee only because she views her presence here as a way to obtain a divorce and secure custody of her child.  Our focus is on Wife's *true* intent rather than on her reason(s) for forming that intent. If Wife *intends* to remain in Tennessee *indefinitely*, she is a "bona fide resident" of this state, regardless of the reason(s) for that intent.

15

In this case, the trial court had to decide if there was a "concurrence of actual change of residence and the intention to abandon the old and acquire a new domicile." *Sturdavant*, 189 S.W.2d at 411. It is clear that there has been an "actual change of residence." *Id.* Wife came to Tennessee shortly after her marriage in December, 1993. She has lived in Knox County ever since, except for two visits to Korea. Since her separation from Husband, she has rented an apartment in Knox County on a six-month lease that is renewable. She does not have a separate residence in Korea and has no property or belongings in that country. The "residence prong" of the domicile test has clearly been met.

On the second prong of the test, "the intention to abandon the old and acquire a new domicile," *Id.*, the trial court had to consider "[Wife's] statement of... [her] intent in the matter, [her] conduct and declarations and all other facts that throw light upon the subject." *Sparks*, 88 S.W. at 174. The trial court basically had to decide if Wife sincerely intended to remain in Tennessee indefinitely. *Sturdavant*, 189 S.W.2d at 412. In doing so, it had an advantage that we do not have--it was able to hear, and observe the demeanor of, the two witnesses who testified in person, i.e., Wife and her minister. Because of this, the trial court was in a much better position than are we to decide whether these witnesses testified truthfully; more specifically, whether Wife was sincere when she said that she wanted to "make Knoxville her home."

16

We have carefully reviewed all of the evidence before the trial court. It is clear that Wife's credibility was an important issue in this case. The trial court chose to believe her testimony and the other evidence tending to support a finding that Wife intends to remain indefinitely in Tennessee. We are not in a position to second-guess the trial court's assessment of the credibility of Wife and the credibility of the other evidence favorable to her position. *Tennessee Valley Kaolin Corp*., 526 S.W.2d 488, 490 (Tenn.App. 1974). Furthermore, we cannot say that the facts relied upon by Husband--including Wife's statements to the federal government--preponderate against a finding that Wife's *present* intent is to establish a domicile in Tennessee. It is clear to us that Wife *wants* to remain indefinitely in Tennessee. As we view it, what she may or may not be *compelled* to do by the federal government does not change that *present* intent. It goes without saying, that life is filled with uncertainties. Unexpected events can and do occur that impact, and even cause a person to change, a previously-formed intent to stay in a given locale indefinitely. The child of a sick parent may feel duty-bound to permanently abandon his or her home to care for the ailing parent. Marriage may prompt one to give up his or her longtime residence. Loss of employment can bring about the same result. A devastating tornado may convince a lifelong resident of the flatlands to move elsewhere. As pertinent to this case, the federal government may compel a person to leave this country even though that person has previously formed a firm intent to remain here indefinitely. The issue regarding domicile is not what may happen in the future,

17

because no one can predict the future; the real question is what is the subject person's *present* intent.

The United States Supreme Court has recognized that

> [e]ach state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders. The marriage relation creates problems of large social importance. Protection of offspring, property interests, and the enforcement of marital responsibilities are but a few of [the] commanding problems in the field of domestic relations with which the state must deal. Thus it is plain that each state by virtue of its command over its domiciliaries and its large interest in the institution of marriage can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent.

*Williams v. State of North Carolina*, 63 S.Ct. 207, 213, 317 U.S. 287, 87 L.E. 279 (1942). We do not believe that our determination--that Wife has established a domicile in Tennessee, which brings her marriage relationship within the ambit of this state's concerns--in any way offends the fundamental concept of due process embodied in the federal constitution. She has been in Tennessee since 1993; she obviously did not come into this state for a "quickie" divorce.

The evidence does not preponderate against the trial court's factually-driven determination that Wife has the requisite intent to establish her domicile in Tennessee. The second issue is found adverse to Husband.

18

C. *Equitable Considerations*


Husband argues that Wife has worked a fraud either on the federal government or the Fourth Circuit Court of Knox County such that her claim of domicile and entitlement to divorce should be denied and dismissed out of hand.  We have reviewed the cases[7] cited by Husband and do not find that any of them are applicable to the facts of this case.  As we have previously pointed out, there is a difference between the goals and purposes of the federal immigration laws, and a state's need to address the marriage relationship, and issues attendant thereto, of a person who resides here and intends to remain here indefinitely.  We find no basis for holding that Wife is equitably estopped from pursuing her claims for relief in this case.


Husband's final issue is without merit.


V. *Conclusion*


It results that the judgment of the trial court is affirmed.  Costs on appeal are taxed to the appellant and his surety.  This case is remanded for further proceedings not inconsistent with this opinion.


_____
Charles D. Susano, Jr., J.

---

[7]*Lingner v. Lingner*, 165 Tenn. 525, 56 S.W.2d 749 (1933); *Knox Tenn. Rental Company v. Jenkins Insurance*, 755 S.W.2d 33 (Tenn. 1988); *Winters v. Allen*, 166 Tenn. 281, 62 S.W.2d 51 (1933); *Tennessee Ice Company v. Raine*, 64 S.W. 29, 107 Tenn. 151 (1901); *Wyatt v. Brown*, 39 Tenn.App. 28, 281 S.W.2d 64 (1955); *Investors Syndicate of America v. Allen*, 198 Tenn. 288, 279 S.W.2d 497 (1955); *In Re Conservatorship of Clayton,* 914 S.W.2d 84 (Tenn.App. 1995).

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Don T. McMurray, J.